193 N.J. Super. 522 (1984)
475 A.2d 76
ROBERT L. MONDELLI, PLAINTIFF-RESPONDENT,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, DEFENDANT-RESPONDENT AND CROSS-APPELLANT,
v.
NATIONWIDE MUTUAL INSURANCE COMPANY, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 17, 1984.
Decided March 22, 1984.
*523 Before Judges BISCHOFF, PETRELLA and BRODY.
Perry & Blum, attorneys for appellant-cross-respondent Nationwide Mutual Insurance Company (Robert C. Blum on the brief).
Soriano, Henkel, Stein & Gaydos, attorneys for respondent-cross-appellant State Farm Mutual Automobile Insurance Company (Allan B. Stein on the brief).
Drazin and Warshaw, attorneys for respondent Robert L. Mondelli (Steven L. Kessel on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
This appeal questions whether plaintiff is protected by the uninsured motorist (UM) provisions of his girlfriend's automobile policy. The accident occurred about 11:00 p.m. as he was standing in the roadway talking to his girlfriend who was in the driver's seat of her car which was parked at the curb. His arm was resting on the roof of the car. Just as she turned the ignition key, another vehicle struck him and drove away without stopping.
Earlier that day plaintiff and his girlfriend had switched cars so that he could tune her car's engine at a garage where he worked as an automobile mechanic. About an hour before the accident plaintiff drove that car to a home where his girlfriend was babysitting. She had driven there in his car. When the homeowners returned, plaintiff and his friend planned to leave in their own cars. At the time of the accident they were discussing where they would later meet. He was also interested in her reaction to the improved sound of the engine. Plaintiff had no intention of entering her car.
*524 Plaintiff and his friend each had policies providing UM protection. Defendant State Farm Mutual Automobile Insurance Company (State Farm) was plaintiff's carrier. Defendant Nationwide Mutual Insurance Company (Nationwide) was his friend's carrier. The UM provisions in both policies are identical. The policy limits are $15,000/$30,000. An arbitrator determined plaintiff's damages to be $19,000. Plaintiff and State Farm contend that he is entitled to the UM protection of both policies. The trial judge held State Farm liable for the full amount of its UM protection and Nationwide for the remaining $4,000. We affirm the judge's determination that State Farm's UM protection and not Nationwide's covers the accident. There is no basis for assessing Nationwide $4,000 and we reverse that portion of the judgment.
The policies each afford UM protection to "the named insured" and to "any other person while occupying an insured highway vehicle." Plaintiff is clearly entitled to the protection afforded by the State Farm policy in which he is a "named insured." The issue on this appeal is whether he was "occupying" his friend's vehicle so as to be entitled as well to the protection of the Nationwide policy.[1] As defined in the policies "`occupying' means in or upon or entering into or alighting from." The precise question then is whether at the time of the accident, plaintiff was "upon" his friend's vehicle and therefore within the policy definition of "occupying" it.
N.J.S.A. 17:28-1.1 requires motor vehicle liability policies to contain UM coverage in order to ease the financial burden on the Unsatisfied Claim and Judgment Fund and to provide protection from uninsured, financially irresponsible motorists. Fernandez v. Selected Risks Insurance Company, 82 N.J. 236, 240 (1980). We must construe the policy liberally to further these objectives. See State Farm v. Zurich Amer. Ins. Co., 62 *525 N.J. 155, 168 (1973). The meaning we arrive at must square with the reasonable expectations of the average member of the public who buys automobile policies so far as the policy language will permit. Cooper v. Government Employees Ins. Co., 51 N.J. 86, 93 (1968).
This interpretative bias favoring coverage does not overcome the meaning of the language in Nationwide's policy. Under that language a person is not occupying an insured vehicle by simply resting his arm upon it. Literally, of course, the word "upon" describes any touching of the insured vehicle. Yet courts have held in this context that the injured person was not "upon" the vehicle though touching it. Rosebrooks v. National Gen. Ins. Co., 13 Mass. App. 1049, 434 N.E.2d 675 (App.Ct. 1982), certif. den. 386 Mass. 1104, 440 N.E.2d 1177 (Sup.Ct. 1982); Lautenschleger v. Royal Indemnity Company, 15 N.C. App. 579, 190 S.E.2d 406 (Ct.App. 1972), cert. den. 282 N.C. 153, 191 S.E.2d 602 (Sup.Ct. 1972); Pennsylvania National Mutual Cas. Ins. Co. v. Bristow, 207 Va. 381, 150 S.E.2d 125 (Sup.Ct. App. 1966). Courts have also held that the injured person was "upon" the vehicle though not touching it. Nickerson v. Citizens Mutual Insurance Co., 393 Mich. 324, 224 N.W.2d 896 (Sup.Ct. 1975), and Sentry Ins. Co. v. Providence Wash. Ins. Co., 91 Wis.2d 457, 283 N.W.2d 455 (Ct.App. 1979); cf. Newcomb Hospital v. Fountain, 141 N.J. Super. 291 (Law Div. 1976) (passenger was "occupying" an automobile even though he was standing beside it watching a gas station attendant negligently pouring gasoline into its radiator when it exploded).
In denying coverage despite a touching, the court in Bristow provides a helpful analysis. It reasoned that the word "upon" should be viewed in relation to the word "occupying" which it defines in the policy and should be read together with the other words with which it is found: "in ... or entering or alighting from." The court formulated the rule as follows:
Within the purposes contemplated here, a person may be said to be "upon" a vehicle when he is in a status where he is not actually "in" or is not in the act of "entering into or alighting from," the vehicle, but whose connection therewith *526 immediately relates to his "occupying" it. [Pennsylvania National Mutual Cas. Ins. Co. v. Bristow, supra, 207 Va. at 385, 150 S.E.2d at 128]
By contrast, the court in Utah Home Fire Ins. Co. v. Fireman's Fund Ins. Co., 14 Cal. App.3d 50, 91 Cal. Rptr. 781 (Ct.App. 1970), the only case we have found with facts similar to those here, held that there was coverage. It did so, however, on the basis of a statute which places "occupying" and "upon" in separate and distinct categories of coverage. N.J.S.A. 17:28-1.1 has no similar provisions.
As we view the policy definition of "occupying," if an injured person is not in an insured vehicle and is not in the process of entering or leaving it when an accident happens, he is not "upon" it as an occupant unless he is on or near the vehicle in connection with his immediate use of it as a means of transportation. Using the roof of the vehicle as an armrest while talking to someone inside does not constitute occupying the vehicle. See Norgaard v. Nodak Mutual Insurance Company, 201 N.W.2d 871, 874 (N.D.Sup.Ct. 1972) (steadying a rifle by resting it on an automobile is not a "use" of the vehicle under a liability policy's "ownership, maintenance or use" clause). This conclusion is consistent with the reasonable expectations of a person buying UM coverage.
Another provision of the policy supports the commonsense notion that to occupy a vehicle, a person outside the vehicle must be there in connection with using it as a means of transportation. As previously noted, to be covered the injured person has to be "occupying an insured highway vehicle." Part of the policy definition of "insured highway vehicle" limits coverage to persons occupying the vehicle "while operated by the named insured...." (Emphasis supplied.) The policy itself thereby links "occupying" the vehicle with using it as a means of transportation and not as a stationary resting place.
The fact that while talking to his friend about a later rendezvous, plaintiff was anticipating her reaction to the sound of the tuned-up engine does not change the character of his connection with the vehicle.
*527 The judgment against State Farm is affirmed. The judgment against Nationwide is reversed.
PETRELLA, J.A.D. (concurring and dissenting).
The majority opinion attempts to lay down a kind of "brightline" test in a situation where either such a test cannot be used or its use is not warranted. Hence, although I concur in affirming the finding of liability as to State Farm, I dissent with respect to Nationwide Mutual[*] and the majority's interpretation of the word, "upon" which is a descriptive element of the defined word, "occupying" in the phrase "occupying a motor vehicle."
I agree with the majority opinion's statement that a purpose of uninsured motorists' (UM) coverage is to provide protection from uninsured, financially irresponsible motorists. I also agree that liberal construction is given insurance policy provisions to achieve that goal. See Fernandez v. Selected Risks Ins. Co., 82 N.J. 236, 240 (1980) and Newcomb Hosp. v. Fountain, 141 N.J. Super. 291 (Law Div. 1976). However, the majority's interpretation of the policy here hardly comports with those principles. Rather, it effectively deletes the word "upon" from the policy definition of "occupying."
In the insurance policy definition of "occupying" the terms "in," "upon," "entering into" or "alighting therefrom" which are each used to define "occupying" are all in the disjunctive.
I would agree that use of an automobile not incident to its operation as an automobile would not be within the reasonable expectations of a person buying UM coverage. However, here plaintiff was leaning on the automobile while waiting to listen to its motor to determine how it was operating after he had repaired it and driven it to where it was parked. Even though there was a short time-lapse, and he may also have been *528 discussing other matters at the time of the accident, this is in my view consistent with provisions of UM coverage under that proposition. Such action would be incident to the operation of the automobile as an automobile. Here plaintiff had lent his own automobile to his friend to go to a baby-sitting job so he could work on her automobile that day to tune it up. He then drove her automobile that night to the house where she was baby-sitting. When she left that house plaintiff was in effect in the process of turning over or returning her vehicle to her. Indeed, at this point plaintiff's actions appear to substantially fit the majority's test under its definition of "upon" because the vehicle upon which he had been leaning when he was struck, had recently been used by him as an occupant in connection with his working on it and using it as a means of transportation to drive it to the house where his friend was baby-sitting. Plaintiff so testified at his deposition:
Q. Under what circumstances did you have her car?
A. I had done work on it that day at the garage where I worked, and I tuned it up, and she needed a car to get to babysitting, so I lent her my car, and I used her car to get there.
....
Q. How did it come about that you were standing in the street that night?
A. Okay. We had left the house where she was babysitting and she had gotten into her car, and I was leaning outside of her car, against her car with my arm on the roof of the car. She was inside, and we were discussing where we were going to go afterwards, whether we were going to my house or her house; and I also wanted to see what she thought of the car once it started up, or if it sounded any better than she had originally had it.
Thus, plaintiff was leaning on his friend's car, apparently as it was being started, intending to get his friend's reaction to the engine he had just tuned and to again check the sound of the engine himself. At the same time he was talking to her about where they were going. The facts are gathered almost solely from plaintiff's deposition testimony used in connection with the arbitration hearing.
*529 At his deposition plaintiff also testified:
Q. Is it a further fact that Miss Chandler had never prior to this accident while you were talking to her put the ignition on on the car?
A. As a matter of fact, she was starting the car.
Q. When you got hit?
A. When I was hit, yes.
Q. Did you hear her turn over the ignition?
A. Yes, I remember that.
Q. How long after she turned over the ignition did you get hit or was it 
A. Right there.
Q. It was just about at that time?
A. Yes.
Q. Had you decided where to go at that time, where to meet her?
A. Yes, but I don't remember where it was.
Q. Okay, and what was your intention at that time, to listen to the car?
A. Right, to listen to the car.
Q. To any comments from her as to how it sounded?
A. First to the car and then her comments.
Q. As a matter of fact, you never really had a chance to listen to the car before the accident?
A. Not really. Well, except for what I heard at the garage beforehand.
Q. No, I am talking about from the time she turned on the ignition until the time you were hit.
A. No.
Q. Had you at all planned to go back into her car to go any place or had you at that time planned to go into your car and either follow her or she follow you to where you were going?
A. I was going to get into my car and follow her.
Q. To the designated place where you were going to meet her?
A. Yes.
Q. As a matter of fact, from the time you parked her car and went in to get her and waited for the people to come home, you had no intention whatsoever of getting back into that particular vehicle?
A. In Barbara's?
Q. Right.
A. No.
Rosebrooks v. National Gen. Ins. Co., 13 Mass. App. 1049, 434 N.E.2d 675, 677 (App.Ct. 1982), certif. den. 386 Mass. 1104, 440 N.E.2d 1177 (Sup.Ct. 1982) contains an "annex" which summarizes various cases which either deny or allow recovery to a person "occupying" a vehicle yet who is not in it while it was *530 being driven. See also Annotation, "Automobile insurance: when is a person `occupying' an automobile within meaning of medical payments provision," 42 A.L.R.3d 501, 511-516 (1972).
Among the cases denying coverage in a similar situation is Pennsylvania Natl. Mut. Cas. Ins. Co. v. Bristow, 207 Va. 381, 150 S.E.2d 125 (Sup.Ct. 1966). I consider Bristow neither helpful nor persuasive. There two insurance companies contended that the other's UM coverage was primary. Pennsylvania National moved for summary judgment. Allstate Insurance Company insured an automobile which was struck in the rear as it was stopped. Plaintiff had UM coverage through Pennsylvania National. At the time of impact to the stopped car, plaintiff, a "good samaritan," had been checking wires under the car's hood. Allstate successfully argued that its policy did not afford plaintiff UM coverage. We are not told in that case whether Pennsylvania National was held liable. The analysis in Bristow was based upon the view that the word "upon" should be viewed in relation to the word "occupying" and be read together with the other words, i.e., "in," "entering into" and "alighting from." However, the defining policy words there were in the disjunctive.
In Utah Home Fire Ins. Co. v. Fireman's Fund Ins. Co., 14 Cal. App.3d 50, 91 Cal. Rptr. 781 (Ct.App. 1970), the court concluded that there was coverage by giving effect to a construction more in keeping with the judicial trend of interpreting provisions of automobile insurance policies to afford coverage and what I perceive to be the trend of New Jersey case law.
The trend toward affording coverage has been evident in New Jersey whether involving liability coverage, uninsured motorist coverage or no-fault coverage. The "no-fault" statute uses the phrase "involving an automobile" (N.J.S.A. 39:6A-4) and hence cases under that statute are not particularly helpful in interpreting liability insurance provisions. However, liability cases are helpful in interpreting uninsured motorist coverage provisions. I am not persuaded, as is the majority, that Utah *531 Home Fire Ins. Co. can be distinguished because a California statute placed "occupying" and "upon" in separate and distinct categories of coverage. While it may be true, as the majority indicates, that N.J.S.A. 17:28-1.1, does not have a similar provision, the insurance policy we have under consideration does list all of the descriptive terms in the disjunctive, and hence as separate and distinct provisions, each with something distinct to add to the definition.
To say, as does the majority opinion, that the policy word "upon" requires the person to be "an occupant unless he is on or near the vehicle in connection with his immediate use of it as a means of transportation," is much too narrow a reading of the term and virtually strikes it from the policy, which is a wholly unwarranted result. Certainly the dictionary definition of that adverb is broader. See Christoffer v. Hartford Accid. & Indem., 123 Cal. App.2d Supp. 979, 267 P.2d 887, 890 (App. Dep't.Super.Ct. 1954), where the court discussed the definition of "upon" and "on" in the context of construing a medical payments provision of an automobile liability insurance policy. The same policy language appeared in the applicable medical payments provision: "caused by accident, while in or upon, entering or alighting from the automobile...." The court there found coverage for the plaintiff who had apparently been struck by another automobile while changing a tire on the borrowed automobile he had been driving.
The Christoffer court followed a middle ground approach which I find persuasive. It gave the word "upon" neither a restricted meaning of "on top" nor a loose meaning connoting "being adjacent or near." Nor is there any justification for the limitation to "immediate use" as proposed by the majority. Logically it might well be argued that such a test of immediacy applies or should apply to the other descriptive adverbs used in the policy to define "occupying." Many situations could arise where a person might be "upon" the vehicle lawfully, although not "immediately" using it or intending to use it for transportation, for example, repairing it, lashing baggage to the top of the *532 vehicle even though it was not intended to be used that particular day or perhaps by that person as a means of transportation. Someone could even be sleeping in an automobile (an occupant in that car) in a parking lot, rest area or campground and an uninsured motorist could collide with the vehicle injuring its occupant. Although the insured in such a case would be "in" the automobile, under the majority opinion it could be argued by a disclaiming insurer where another policy's UM provision might be implicated that the automobile was not being or about to be immediately used as a means of transportation. The majority's test seems to limit the word "upon" to immediate use by occupying the vehicle.
Rather than attempt to apply a hard and fast rule which may not fit well in all circumstances, I would leave the determination of whether the policy definition of "occupying" applied to a case-by-case analysis which would depend on the facts involved in the accident and the use of the automobile. Mere coincidental connection between the accident and some touching of the car would not be enough. See Rosebrooks v. Natl. Gen. Ins. Co., supra; Sciascia v. American Ins. Co., 183 N.J. Super. 352 (Law Div. 1982), aff'd o.b. 189 N.J. Super. 236 (App.Div. 1983), and Christoffer v. Hartford Accid. & Indem., supra.
It is undisputed in this record that plaintiff had been leaning on the automobile to listen with his friend to the sound of the vehicle's engine which he had worked on, as well as making conversation. It seems undisputed that the accident occurred while that vehicle's motor had been started and plaintiff was leaning on the car listening or attempting to listen to that motor when he was struck by an unknown motorist. Furthermore, although I would not remand for a fact hearing because the facts are undisputed, it cannot be overlooked that the plaintiff, as a party opposing the summary judgment motion, is entitled to the reasonable inferences from the evidence. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954). I would conclude under these circumstances that plaintiff *533 is covered here under State Farm's policy's UM provision issued to the owner of that car.
Although I agree with the trial judge that each of these defendant-insurers is liable to plaintiff, under such circumstances the judge failed to take into account the effect of the virtually identical policy provisions of the escape-excess clauses in the UM provisions. Such provisions were held invalid and ineffective under our UM legislation. Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277, 292-294 (1974). Therefore both policies are to be treated as primary and liability would be shared equally. Cosmopolitan Mutual Ins. Co. v. Continental Cas. Co., 28 N.J. 554, 562 (1959). I would find that Nationwide and State Farm were each responsible to plaintiff for one-half of the arbitration award.
NOTES
[1] "Stacking," permitted here by Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277 (1974), is no longer permitted under L. 1983, c. 362, § 2(c) (N.J.S.A. 17:28-1.1(c)) which became effective January 1, 1984.
[*] State Farm insured plaintiff. Nationwide was the carrier for plaintiff's friend.