ROBERT L. MONDELLI, PLAINTIFF-APPELLANT, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND NATIONWIDE MUTUAL INSURANCE COMPANY, DEFENDANTS-RESPONDENTS.

Argued March 19, 1985—Decided April 7, 1986.

*Louis F. Locasio* argued the cause for plaintiff-appellant (*Drazin & Warshaw*, attorneys; *Steven L. Kessel*, on the brief).

*Anthony J. Marinello* argued the cause for defendant-respondent State Farm Mutual Automobile Insurance Company (*Sariano, Henkel, Stein & Gaydos*, attorneys).

*Robert C. Blum* argued the cause for defendant-respondent Nationwide Mutual Insurance Company (*Perry & Blum*, attorneys).

PER CURIAM.

Plaintiff, Robert L. Mondelli, sustained personal injuries when struck by a hit-and-run vehicle while he was leaning against his girlfriend's car. He seeks recovery under the uninsured-motorist (UM) provisions of two policies, each furnishing UM coverage in the amount of $15,000. One policy was issued to plaintiff's father by defendant State Farm Mutual Automobile Insurance Company (State Farm), and the other, issued by defendant Nationwide Mutual Insurance Company (Nationwide), covered an automobile owned by Jay M. Chandler, father of Mondelli's girlfriend.

As called for by the provisions of each policy, plaintiff's claim for the UM coverage of both policies went to arbitration. The arbitrator awarded plaintiff $19,000 damages but specifically declined to determine which policy was primary and which was secondary. Thereafter plaintiff filed this suit in which he sought a judgment against both carriers for the $19,000. The trial court made a specific finding—a critical one, as will hereafter appear—that plaintiff was in fact "leaning on" the girlfriend's vehicle "when an unknown hit-and-run motorist came along and struck him." Although it concluded that plaintiff's contact with the Chandler vehicle in that fashion was insufficient to qualify plaintiff as an occupant as that term is defined in the Nationwide policy, the trial court nevertheless held, without extended discussion or analysis, that Nationwide's UM coverage was secondary to State Farm's and that therefore State Farm was liable for $15,000 (the extent of its UM coverage) of plaintiff's damages and that Nationwide should pay the remaining $4,000.

On Nationwide's appeal and State Farm's cross-appeal the Appellate Division, by a split vote, affirmed the $15,000 award against State Farm but vacated the $4,000 judgment against Nationwide. *Mondelli v. State Farm Mut. Auto. Ins. Co.*, 193 *N.J.Super.* 522 (1984). Judge Petrella concurred in part and dissented in part. *Id.* at 527–33. He would have found both

carriers liable and assessed against each of them one-half of the arbitration award. *Id.* at 533.

Only plaintiff seeks relief in this Court. He inadvertently filed a petition for certification, notwithstanding his right to appeal under Rule 2:2–1(a) by virtue of the dissent in the Appellate Division. We therefore treat plaintiff's appeal as one of right. *Mondelli v. State Farm Mut. Auto. Ins. Co.*, 99 *N.J.* 154 (1984) (mem.) (Order setting forth the foregoing). Neither insurance carrier filed a notice of appeal or cross-appeal to attack the Appellate Division judgment. Our review is therefore confined to the sole issue raised on plaintiff's appeal, namely, whether plaintiff is entitled to the UM coverage afforded under the Nationwide policy as well as that furnished by State Farm. Substantially for the reasons set forth in Judge Petrella's minority opinion below, we affirm so much of the judgment of the Appellate Division as holds State Farm's UM coverage available to plaintiff and reverse so much of that judgment as holds Nationwide's UM coverage unavailable.

## I

The facts giving rise to plaintiff's claim are recited in the majority opinion below as follows:

> The accident occurred about 11:00 p.m. as [plaintiff] was standing in the roadway talking to his girlfriend [Barbara Chandler] who was in the driver's seat of her car, which was parked at the curb. His arm was resting on the roof of the car. Just as she turned the ignition key, another vehicle struck him and drove away without stopping.
>
> Earlier that day plaintiff and his girlfriend had switched cars so that he could tune her car's engine at a garage where he worked as an automobile mechanic. About an hour before the accident plaintiff drove that car to a home where his girlfriend was babysitting. She had driven there in his car. When the homeowners returned, plaintiff and his friend planned to leave in their own cars. At the time of the accident they were discussing where they would later meet. He was also interested in her reaction to the improved sound of the engine. Plaintiff had no intention of entering her car. [193 *N.J.Super.* at 523.]

The question posed by plaintiff's appeal is whether, under the foregoing circumstances, Mondelli came within the scope of UM coverage afforded by Nationwide's policy to "the named in-

sured" and to "any other person while occupying an insured highway vehicle." The language of the State Farm policy is, incidentally, the same, and there is no dispute that plaintiff, as a "named insured," comes within the UM coverage of that policy. The narrow issue is whether plaintiff was "occupying" the Nationwide-insured automobile. The policy definition of "occupying" is "in or upon or entering into or alighting from." Plaintiff argues that he was "upon" his girlfriend's vehicle and hence was "occupying" it when he was struck by the hit-and-run automobile.

The respective opinions below canvass the authorities throughout the country interpreting the same or similar policy language. We see no necessity to cover the same ground. As the majority in the Appellate Division viewed the policy definition of "occupying,"

> if an injured person is not in the process of entering or leaving it when an accident happens, he is not "upon" it as an occupant unless he is on or near the vehicle in connection with his immediate use of it as a means of transportation. Using the roof of the vehicle as an armrest while talking to someone inside does not constitute occupying the vehicle. This conclusion is consistent with the reasonable expectations of a person buying UM coverage. [193 *N.J.Super.* at 526 (citation omitted).]

In addition, the court below found "common-sense" support for its conclusion that "to occupy a vehicle, a person outside the vehicle must be there in connection with using it as a means of transportation." *Id.* Because the policy's UM provisions, so far as applicable here, required that the injured person be "occupying an insured highway vehicle," and because part of the policy definition of "insured highway vehicle" restricts coverage to persons occupying the vehicle "while operated by the named insured," the majority below reasoned that "the policy itself thereby links 'occupying' the vehicle with using it as a means of transportation and not as a stationary resting place." *Id.* Finally, the court held that the character of plaintiff's connection with his girlfriend's vehicle was not changed by the fact that while talking to his friend about a later rendezvous, plaintiff was "anticipating her reaction to the

sound of the tuned-up engine." *Id.* The majority in the Appellate Division therefore concluded that State Farm's $15,000 UM coverage applied and that Nationwide's did not.

Judge Petrella, whose comprehensive minority opinion we find persuasive, chose to follow the lead of *Christoffer v. Hartford Accident & Indem. Co.*, 123 *Cal.App.*2d *Supp.* 979, 267 *P.*2d 887 (1954), which gave the word "upon" neither a restricted meaning of "on top" nor a loose meaning connoting "being adjacent or near." Moreover, Judge Petrella could find no justification for the Appellate Division majority's limitation of "upon" to require "immediate use" of the vehicle. As the partial dissent points out,

[l]ogically it might well be argued that such a test of immediacy applies or should apply to the other descriptive [words] used in the policy to define "occupying." Many situations could arise where a person might be "upon" the vehicle lawfully, although not "immediately" using it or intending to use it for transportation, for example, repairing it, lashing baggage to the top of the vehicle even though it was not intended to be used that particular day or perhaps by that person as a means of transportation. Someone could even be sleeping in an automobile (an occupant in that car) in a parking lot, rest area or campground and an uninsured motorist could collide with the vehicle injuring its occupant. Although the insured in such a case would be "in" the automobile, under the majority opinion it could be argued by a disclaiming insurer where another policy's UM provision might be implicated that the automobile was not being or about to be immediately used as a means of transportation. The majority's test seems to limit the word "upon" to immediate use by occupying the vehicle. [193 *N.J.Super.* at 531–32 (Petrella, J.A.D., concurring in part and dissenting in part).]

██ Because there is much to commend Judge Petrella's eschewing of any "hard and fast rule" that may not fit well in all circumstances, we adopt that approach and are content, as was he, to leave the determination of whether the policy definition of "occupying" is satisfied to a case-by-case analysis, depending on the facts of the accident and of the use of the vehicle. *Id.* at 532. We agree with Judge Petrella's cautionary note that "[m]ere coincidental connection between the accident and some touching of the car would not be enough." *Id.* That approach leads us to the same conclusion as reached by the partial dissent below, namely, that under the facts of this case,

in which the trial court found that plaintiff was "leaning on" the Nationwide-insured vehicle, and in which plaintiff's non-coincidental connection with that vehicle is clear, Nationwide's UM coverage applies as well as State Farm's.

## II

There remains a question as to which of the UM coverages is primary and which is secondary. Each policy furnishes $15,000 of insurance. Plaintiff is entitled to $19,000. Whatever the effect on the availability of the two coverages would be today under *L.* 1983, *c.* 362, § 2(c), codified in *N.J.S.A.* 17:28–1.1(c), this case arose before the effective date of that enactment, January 1, 1984, and hence resort to both policies would be allowed under *Motor Club of Am. Ins. Co. v. Phillips,* 66 *N.J.* 277 (1974).

As we have indicated, neither carrier has appealed from the judgment of the Appellate Division, which held State Farm alone liable for the amount of its coverage, $15,000. In this Court the carriers, as respondents only, have simply relied on their Appellate Division briefs, in which the question of primary and secondary coverage was adverted to in only the most cursory fashion. Nationwide ignores the issue completely, contending that inasmuch as plaintiff was not "occupying" its insured's automobile at the time of the accident, it was neither primarily nor secondarily liable, a position that we have rejected. State Farm, in its Appellate Division brief, points to the standard "other insurance" clause in its UM endorsement and argues that because Mondelli was "occupying" Nationwide's insured's vehicle at the time of the accident, Nationwide's UM coverage is primary. Mondelli, apparently—and understandably—indifferent to the source of his recovery, urges us to find, as we have found, that the UM coverage of both insurance policies applies; he does not address the issue of which one is primary.

■ In that posture of the case, and particularly in the absence of any appeal by the carriers from the judgment below, we leave in place so much of the trial court judgment as touches the apportionment of plaintiff's total recovery of $19,-000—that is, $15,000 against State Farm and $4,000 against Nationwide. In so doing we do not at all suggest a definitive ruling on the point, or even imply that that result is correct. The question is just not before us. *See Ciecka v. Transamerica Ins. Group*, 81 *N.J.* 421, 429 (1979). Nor is an answer to it of surpassing importance in view of the now-effective "anti-stacking" legislation referred to above.

### III

The judgment of the Appellate Division is affirmed in part and reversed in part; the cause is remanded to the Law Division for entry there of judgment in conformity with this opinion.

CLIFFORD, J., concurring.

To the Court's eminently sound opinion, in which I join, I would add only the following brief comment.

At bottom this case amounts to a coverage dispute between two insurance carriers. Although I recognize that some questions of coverage may implicate portentous public policy considerations or call for a detailed analysis of contract-law principles, the issues projected by this case do not fall into either of those categories. Quite simply, two or three experienced liability-insurance people could, as easily as the court system, have decided what "upon" means in the context in which Nationwide used it ("The insurance industry is not, after all, in the position of Ethelred the Unready. One may reasonably assume that it has available perceptive and competent counsel * * * skilled in the craft of explicit expression." *495 Corp. v. New Jersey Ins. Underwriting Ass'n*, 86 *N.J.* 159, 170–71 (1981) (concurring opinion)); and they could likewise have determined the issue that we have left unanswered, namely, the primary-secondary ques-

tion. And I venture to guess that they could have decided those questions in very short order, without the expenditure of talent, resources, energy, and money represented by the proceedings engaged in here: arbitration, a Superior Court trial replete with depositions, an appeal to the Appellate Division with full briefing and oral argument that produced two opinions, and further briefing by way of petition for certification and responsive papers in this Court, followed by oral argument and ultimately these opinions.

Much of the expense attendant on this litigation will be borne by the insurance industry and eventually—inevitably—by the insured public. I have to wonder whether it is all worth the cost, and have to wonder whether the people responsible for the decisions that can generate so much activity are really thinking about the problem. There must be a better way, and the people most directly concerned, namely, the insurance industry, would be well advised to bend their best efforts towards finding that way. Should they continue to ignore the problem, they run the risk that others, perhaps less qualified albeit well-intentioned, will enter the arena. That has been known to create even bigger problems.

For now I would do no more than repeat the entreaty that found its way into *Parks v. Colonial Penn Ins. Co.*, 98 *N.J.* 42 (1984):

> Finally, we add the thought that the insurance industry would perform a significant public service—as well as help itself—were it to devise a procedure for resolution of coverage issues outside of the litigation area. History tells us that the American Insurance Association, the Alliance of American Insurers, and the National Association of Independent Insurers have all endorsed the principle of intercompany arbitration for the purpose of resolving certain coverage disputes. The ingenuity and resourcefulness of the industry should be brought to bear on the issue that underlies this case. [*Id.* at 50–51

Justice POLLOCK joins in this concurrence.

*For affirmance in part, reversal in part and remandment* —Chief Justice WILENTZ and Justices HANDLER, O'HERN, GARIBALDI, STEIN, CLIFFORD and POLLOCK—7.

*Opposed*—None.