239 N.J. Super. 139 (1990)
570 A.2d 1250
FRANK BURBRIDGE AND ANGELA BURBRIDGE, HIS WIFE; JOHN E. BURBRIDGE AND MARY BURBRIDGE, HIS WIFE, JOSEPH P. BURBRIDGE AND ELAINE BURBRIDGE, HIS WIFE, PLAINTIFFS-RESPONDENTS, CROSS-APPELLANTS,
v.
JOHN PASCHAL AND THOMAS PASCHAL, DEFENDANTS-APPELLANTS, CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 1989.
Decided February 21, 1990.
*142 Before Judges KING, SHEBELL and BAIME.
Herbert M. Korn argued the cause for appellant (William J. DeMarco, on the brief).
Richard T. Sweeney argued the cause for respondents (Sears, Sweeney & Marcickiewicz, attorneys).
The opinion of the court was delivered by KING, P.J.A.D.
The principal point on this appeal concerns the implication of the failure to cross-appeal from a dismissal on the merits of a count of the complaint. We conclude that this failure to cross-appeal on the dismissed count was fatal to an attempt to retry that count after reversal on the direct appeal.
*143 This appeal is taken from a judgment in April 1988 in which the jury awarded plaintiffs an aggregate $20,000 in compensatory and $2,000 in punitive damages for nuisance claims (Count Five) and $30,000 in compensatory and $45,000 in punitive damages for defamation claims (Count Six). Defendants appeal from these verdicts, totalling $97,000. The jury decided the claims on Counts One and Two (malicious prosecution) in defendants' favor. The claims under the Third and Fourth Counts of the complaint, for malicious abuse of process and the Seventh Count for intentional infliction of emotional distress, were dismissed by the trial judge and not submitted to the jury. Plaintiffs cross-appeal from these rulings.
Plaintiffs Frank and Angela Burbridge, John and Mary Burbridge, and Joseph and Elaine Burbridge live on Thomastown Road in Mine Hill. Defendants John Paschal and Thomas Paschal live across the road from plaintiffs, where they also operate a junkyard. In 1977 John Paschal was cited and convicted in the Municipal Court for maintaining a nonconforming commercial use of his property, which had been zoned residential. His municipal court conviction was set aside on appeal de novo to the Law Division. In 1980 he applied for a license to operate the junkyard. The Township Committee granted the license for an expanded nonconforming use on the condition that he erect a ten-foot fence around the site. Defendant completed the fence later that year.
In February 1982 John Paschal began leasing a small, wooded area of land owned by Ann Fran Realty, located immediately adjacent to the houses of plaintiffs Joe and John Burbridge. The leased property contained mine holes about 30 feet deep and 30 feet in diameter. John Paschal alleges that before the lease began, the plaintiffs had illegally dumped refuse and chemicals into these mine holes. In what he claims was an effort to persuade plaintiff to remove the dumped material from the Ann Fran property, Paschal posted "no trespassing" and "no dumping" signs on trees between the two lots. He claims that plaintiffs responded by defacing or removing the *144 signs. Paschal then erected several more signs along this property line which read, "Joe Burbitch Landfill," "Joe Burbitch Dump," "24 Hr. Dumping for Family Members Only" and "Joe Burbitch Shit." These signs were visible from the plaintiffs' homes and from Thomastown Road. Plaintiffs also allege that defendants used various forms of harassment including "banging, laughing and jeering" at various times, all of which plaintiffs claim constituted a common-law nuisance interfering with the use of their property.
On September 1, 1982 plaintiffs started an action in lieu of a prerogative writ against the Township of Mine Hill, its officials and defendant John Paschal to stop Paschal from expanding the scope and use of his junkyard, a nonconforming use in this residential zone. Plaintiffs prevailed in that case in the Law Division and on appeal to this court but Paschal sought further relief by variance. The litigation over Paschal's variance application culminated recently in his favor. See Burbridge v. Mine Hill, 117 N.J. 376, 568 A.2d 527 (1990). That opinion contains a detailed history of both the use of the Paschal property and of the litigation between the parties.
On October 26, 1982 defendant John Paschal filed a municipal complaint charging plaintiffs with illegal dumping on the wooded property leased to him. On March 8, 1983 the municipal court found plaintiffs not guilty. That complaint was the subject of plaintiffs' claims for wrongful abuse of process and malicious prosecution, asserted in the Law Division in the present case.
On April 25, 1983 plaintiffs filed this civil complaint for damages which resulted in the aggregate $97,000 judgment of April 1988 and which is the subject of this appeal. Plaintiffs Frank Burbridge and Angela Burbridge, John E. Burbridge and Mary Burbridge, and Joseph Burbridge and Elaine Burbridge (collectively, plaintiffs) filed the seven-count complaint against John Thomas Paschal (Thomas) and John George Paschal (John) *145 (collectively, defendant or defendants).[1] The first and second counts of the complaint alleged that defendants instituted, with malice and without probable cause, a municipal court action resulting in a not-guilty verdict against plaintiffs Joseph and John Burbridge. The third and fourth counts alleged that John Paschal utilized that legal process to intimidate and harass plaintiffs, Joseph and John Burbridge. The fifth count alleged that both defendants created a common-law nuisance with regard to the property they leased near the homes of the three plaintiff couples which interfered with the use and enjoyment of plaintiffs' homes. The fifth, or nuisance count stated:
6. During the term of such lease, Defendant John Paschal has utilized this property in a manner which has caused noise, dust and fumes to emanate from such property. In addition, Defendant John Paschal has caused such property to be strewn with trash, litter, scrap materials and other debris. Defendant John Paschal has also caused to be erected on such property certain signs and placards which are derogatory in nature and which are located so as to be constantly visible from Plaintiffs' properties and Thomastown Road.
7. As a result of Defendant John Paschal's use of the above described property as set forth herein, Plaintiffs have suffered serious and unreasonable interference with the use and enjoyment of their respective properties and have suffered a diminution of the residential property value of their respective properties.
WHEREFORE, Plaintiffs demand judgment against the Defendant John Paschal:
A. Directing John Paschal to cease and desist in the utilization of such property in such a manner as constitutes a nuisance;
B. Awarding to Plaintiffs damages, reasonable attorney's fees and costs of suit.
The sixth, or defamation count alleged that defendants had erected scandalous and derogatory signs which were visible from plaintiffs' homes as well as to the public, and that plaintiffs were thereby defamed in reputation and character. The sixth count stated:
2. Defendant John Paschal has erected, or caused to be erected, certain signs which present Plaintiffs in a false and derogatory light as aforesaid.

*146 3. Defendant Thomas Paschal has knowingly and willingly taken part in the construction and design of these scandalous and derogatory signs.
4. The aforesaid signs are visible from Plaintiffs' respective properties as well as from Thomastown Road.
5. These aforesaid signs, aside from being an eyesore and blight upon the neighborhood in themselves, convey the false message that the condition of John Paschal's leasehold property as set forth previously, that is that it is strewn with litter, scrap and debris, is the result of actions by Plaintiffs.
6. These signs were constructed by Defendants John Paschal and Thomas Paschal with reckless disregard for the truth, and with the intent to injure the name and reputation of Plaintiffs to subject them to public scorn, and by portraying them in this false light, to embarrass and humiliate Plaintiffs in the eyes of the community.
7. These signs have been seen and read by a large number of people.
8. As a result of these aforesaid actions by Defendants the Plaintiffs have sustained injury to their reputation, fame or character, have suffered personal humiliation, embarrassment and mental anguish, suffering and distress.
WHEREFORE, Plaintiffs demand judgment against Defendants John Paschal and Thomas Paschal for compensatory damages, punitive damages, interest and costs of suit.
The seventh count alleged that defendants had intentionally inflicted severe emotional distress upon plaintiffs. Plaintiffs asserted that the Paschals had used the leasehold property "consistently and systematically [to] harass, impede and prevent plaintiffs from all reasonable use and enjoyment of [their] properties." Plaintiffs alleged that defendants knew that their actions would "inflict severe emotional shock and trauma upon plaintiffs" and that as a result "of the extreme and outrageous actions of defendant ... plaintiffs have suffered severe and debilitating emotional shock and trauma."
These events took place as the trial date approached. On February 14, 1985 a notice of trial was issued assigning a trial date of March 25, 1985. On February 9, 1985 plaintiffs had obtained orders compelling defendant John Paschal to respond to certain interrogatories and compelling defendant Thomas Paschal to appear for depositions. On March 7, 1985 plaintiffs obtained an order compelling both defendants to disclose their financial status.
John Paschal failed to make discovery in accordance with the March 7, 1985 order. Further, he failed to appear for court-ordered *147 depositions which had been scheduled for March 25 or April 1, 1985; defendant's counsel explained that defendant was "outside the State."
On April 9, 1985 the court again ordered John Paschal to appear for depositions and to provide discovery as he had previously been ordered. The court also instructed that in the event Paschal failed to appear, an order would be entered suppressing his answer and defenses and entering default on plaintiffs' complaint. The trial date was rescheduled for April 30.
On April 30 defendant John Paschal made an application to Judge Gascoyne for a two-week adjournment of this matter. Paschal argued that an adjournment was necessary because of a controversy which allegedly had developed between him and his attorney and which prompted him to seek substitute counsel. That motion was denied. The court advised defendant that he would have to proceed pro se if his counsel would not proceed on the trial date set by the court.
On May 2, 1985, after the case had been assigned to a trial judge, defendant John Paschal unsuccessfully made another application for a four-day adjournment of the trial to allow his newly-retained attorney to prepare for trial. During the preliminaries before selecting a jury, defendant indicated that he was not feeling well. The trial judge referred him to the presiding judge, civil part, to request an adjournment on the basis of illness. Defendant made this request to the presiding judge, but the application was again denied.
Defendant collapsed during the luncheon recess on May 2 and was transported to the local hospital by ambulance. The trial judge was informed of the reason for defendant's failure to return to court after recess but nevertheless entered a default judgment against him on May 6. The default order provided that the default would be vacated on or before May 17 upon a showing that defendant's absence from the courtroom was justified. Defendant then submitted a certification in support *148 of his motion to vacate the default, which described the symptoms he had experienced during his absence from the courtroom on May 2. His examining physician's report indicated that although defendant's electrocardiogram, pulse and blood pressure were normal, defendant had suffered from a vasovagal stress reaction associated with hyperventilation, bringing on the manifested physical reactions. Despite these contentions, the trial judge concluded that defendant had feigned illness as a means of obtaining a continuance and refused to vacate the default.
Pursuant to the default order entered on May 6, a proof hearing was conducted on May 20 and 21, during which proofs were submitted on behalf of plaintiffs. Counsel for defendants was present and participated. On May 30, 1985 Judge D'Ambrosio entered judgments in favor of the various plaintiffs in the total amount of $180,000 for compensatory and punitive damages. These judgments were as follows: Frank and Angela Burbridge, $25,000 compensatory and $5,250 punitive damages; John E. and Mary Burbridge, $50,000 compensatory and $8,250 punitive damages; Joseph P. and Elaine Burbridge, $90,000 compensatory and $11,500 punitive damages. The judgment awarded these damages on Counts One, Two, Five and Seven  the counts for malicious prosecution (One and Two), nuisance (Five), and intentional infliction of emotional harm (Seven), respectively. The judge dismissed Counts 3 and 4 (malicious abuse of process) and 6 (defamation). R. 4:43-2(b). The order of dismissal specifically stated: "Further Ordered that Counts 3, 4 and 6 be and are hereby dismissed."
Judge D'Ambrosio said in his oral decision at the proof hearing: "It is conceded by both sides that the complaint although in seven counts falls into four basic causes of action being asserted." These were nuisance, defamation, infliction of severe emotional distress, and malicious prosecution. On the dismissal of the defamation Count Six, Judge D'Ambrosio specifically stated:

*149 I will take the defamation allegations first because it seems to this Court that the proof of special damages is a requirement of a cause of action for defamation unless the defamation is one of these special categories which our Courts refer to as the per se defamations.
I don't know why this isn't a per se type of event, but the Courts have said it isn't. And there was no proof of special damages. So there can be no recovery on the defamation counts.
I suppose there's a tenuous, or comes close with regard to Joseph Burbridge and Elaine Burbridge. Joseph, according to the evidence, was once a mayor of the town, and mayor was referred to. However, it didn't allege that he did anything wrong as mayor. It wasn't a defamation with regard to his occupation or profession, because he wasn't mayor at the time.
And Elaine, for some reason, was singled out for an effigy.
It would be a stretch of the imagination to suggest that some profession was being suggested by the placing of a thin lath stick between the legs of the effigy. It would be too tenuous and, as a matter of fact, thinking about it, perhaps defiling the people more than is warranted.
And so, I cannot come to any conclusion, I cannot make any finding of a per se defamation under the law.
I did some research. I thought there should be. I just couldn't find out that indicated that this is a per se. And there being no special damages, I find that I can't award damage on the defamation allegations.
See Heimbach v. Mueller, 229 N.J. Super. 17, 23-24, 550 A.2d 993 (App.Div. 1988); Morales v. Santiago, 217 N.J. Super. 496, 505, 526 A.2d 266 (App.Div. 1987) (on failure to prove a prima facie case of damages after default).
Defendants then appealed to this court. On June 16, 1987 we reversed the judgment of May 30, 1985 and remanded the case to the Law Division "for further proceedings." There was no cross-appeal taken from the dismissal of Counts Three and Four (malicious abuse of process) and Count Six (defamation). R. 2:3-4.
Following our reversal, this case proceeded to trial on March 8, 1988. Before the trial began, counsel and the court discussed the issues to be tried. The primary dispute was whether the malicious abuse of process counts (Three and Four) and the defamation count (Six), dismissed after the proof hearing, were still viable. The newly-assigned trial judge, who was not the original trial judge, concluded that these counts were still in the case and could be tried. The defense then requested a continuance *150 on the grounds that it was unfairly surprised by this development. The request was denied.
As described, the jury returned the aggregate verdict on the defamation count in the sum of $30,000 compensatory damages and $45,000 in punitive damages and the aggregate verdict on the nuisance count in the sum of $20,000 in compensatory damages and $2,000 in punitive damages. The jury found in favor of defendants on the malicious prosecution counts. As noted, the judge refused to permit Counts Three and Four, malicious abuse of process, and Count Seven, malicious infliction of emotional harm, to go to the jury. Defendants then appealed the judgment on Counts 5 and 6; plaintiffs cross-appealed the judge's dismissal of Counts 3, 4 and 7.

I
Defendant-appellant John Paschal urges that the trial judge erred in relitigating Count Six, the defamation count, and in submitting that claim to the jury after it had been dismissed. Plaintiffs urge that defendant's contention places an overly technical emphasis on the procedural rather than the substantive aspects of this appeal. We disagree with plaintiffs and must reverse the verdict on the defamation count.
The trial judge thought that the "equitable thing to do" was to set aside the dismissals against plaintiffs previously entered as a result of the proof hearing and "to permit the plaintiff to go to trial on them." He said that he chose not to "rely on form over substance."
The problem is that the judge simply had no jurisdiction to rehear the defamation claims asserted in Count Six. These claims had been heard on the merits and dismissed for failure to establish a compensable claim at the time of the proof hearing. Judge D'Ambrosio specifically found that "there can be no recovery on the defamation count" and ordered that count dismissed in the May 30, 1985 order for judgment. This dismissal operated as an adjudication on the merits and was *151 with prejudice. R. 4:37-2(d). It was never the subject of a cross-appeal, R. 2:3-4, or a motion for relief from judgment, R. 4:50-1.
Nor can we take the view that our previous decision simply sent the entire matter back to start the case over afresh and from the beginning, procedurally. True, the 1985 notice of appeal recited that defendant John Paschal appealed "from the entire decision" of the Law Division. That notice of appeal referred both to the orders of May 21 and May 30, 1985 and to the failure of Judge D'Ambrosio to "recuse himself" from the two-day proof hearing as grounds for appeal.
Our 1987 opinion reversed the aggregate judgments for the plaintiffs of $180,000 on Counts One, Two, Five and Seven because "the refusal to grant the adjournment or to vacate the default requires a reversal of the judgment." There was nothing in our 1987 opinion to suggest that the reversal was in any way intended to deprive defendant of the favorable results obtained in the Law Division on Counts Three, Four and Six at the conclusion of the proof hearing. If plaintiffs did not like the dismissals on those counts, they should have cross-appealed. Since they did not, this court had no jurisdiction, under settled principles of law, to disturb these dismissals, even at the time of the first appeal to us back in 1987.
This principle is established by an unbroken line of cases in our modern era. A party may not attack the judgment under review without having appealed. "This is the procedure contemplated and provided for by the rules and it has been recognized as a matter of practice." Liberty Title & Trust Co. v. Plews, 6 N.J. 28, 45, 77 A.2d 219 (1950) (Vanderbilt, C.J.). In Franklin Discount Co. v. Ford, 27 N.J. 473, 491, 143 A.2d 161 (1958), the Supreme Court found itself "without jurisdiction to decide the question" raised by plaintiff-respondent as to whether "the trial court erroneously denied its motion for a non-jury trial." The Supreme Court rather conclusively stated: "The plaintiff has not cross-appealed from the judgment below and *152 we have held that a party, in order to attack the actions below which were adverse to him, must pursue a cross-appeal." Ibid.
This principle appears to command universal application. In Mondelli v. State Farm Mut. Auto. Ins. Co., 102 N.J. 167, 174, 506 A.2d 728 (1986), the plaintiff alone sought relief in the Supreme Court. In the absence of a cross-appeal by either insurance carrier defendant, the Court noted that it "left in place" that portion of the trial judgment not subject of the appeal. The Court said: "In so doing we do not at all suggest a definite ruling on the point, or even imply that the result is correct. The question is just not before us." Ibid. Accord, State v. Ogar, 229 N.J. Super. 459, 472, 551 A.2d 1037 (App.Div. 1989) (defendants who failed to file cross-appeal from trial judge's decision upholding constitutionality of criminal statute are "precluded from raising this point as an issue" on appeal); State v. Pescatore, 213 N.J. Super. 22, 30, 516 A.2d 261 (App. Div. 1986), aff'd o.b. 105 N.J. 441, 522 A.2d 440 (1987) ("Failure to cross-appeal effectively precludes [defendants] from raising that argument."); State v. Sanchez, 183 N.J. Super. 391, 396, 444 A.2d 52 (App.Div. 1972) (Because the State failed to cross-appeal, "it is foreclosed from questioning that determination at this late date."); Areba School Corp. v. Mayor & Council of Tp. of Randolph, 151 N.J. Super. 336, 342, 376 A.2d 1273 (App.Div.), certif. den. 75 N.J. 586, 384 A.2d 816 (1977) ("In the absence of a cross-appeal this issue is not before us"); Lyons v. Hartford Ins. Group, 125 N.J. Super. 239, 248, 310 A.2d 485 (App.Div. 1973) ("We cannot consider the point, for it can only be brought here by cross-appeal and none has been filed," citing Franklin Discount). The only slight amelioration of the principle we can find is Matter of Estate of Karas, 197 N.J. Super. 642, 645, 485 A.2d 1083 (App.Div. 1984), where a modification in the judgment, not subject of the appeal, made "no substantive change in the result [that trial] Judge McGann intended." We stated, "[i]n reality we have simply used a different theory than that relied upon by the trial judge to reach the same end." Ibid. An affirmance by us on Count Six here would hardly reach the "same end" in this case but would *153 be a reversal, in effect, of the original final order of dismissal of that count.
We conclude that the judgment on appeal representing damages for defamation as claimed in Count Six must be reversed. This claim was dismissed by Judge D'Ambrosio, rightly or wrongly, in the May 30, 1985 order after the two-day proof hearing. No appeal or cross-appeal was taken from that final order. R. 2:2-3; R. 2:3-4. We could not have altered that portion of the judgment in defendant's favor, which had dismissed the three counts of the complaint, (Counts Three, Four and Six), at the time of the 1987 appeal absent a cross-appeal properly taken and before us at that time. We cannot allow a judgment contrary to and inconsistent with that 1985 order of dismissal to stand at this time, no matter what the "equities" may have seemed to the trial judge upon our initial remand in 1987.

II
We next consider the claim that a photograph of plaintiffs' lawn in the Spring of 1982, P-38, was improperly admitted into evidence and was unduly prejudicial to the plaintiff. On the second day of trial, plaintiff successfully offered into evidence a photograph (P-38) showing the view of plaintiff Joseph Burbridge's lawn from the roof of his house. The photograph clearly shows that a portion of the grass on his lawn, about 300 square feet, had turned brown.
Just before P-38 was introduced into evidence, plaintiff Joseph Burbridge had testified on direct examination that in 1982 his front yard and the bushes around his home had been vandalized for "a total damage of approximately $2,000." Joseph Burbridge testified that he later mentioned the vandalism to defendant John Paschal during a telephone conversation. When asked to recount defendant's reply, plaintiff testified:

*154 A. Yes. I said to Mr. Paschal, I can't say you did, but I said it's awful funny that all of a sudden I live here for so many years and all of a sudden this would happen. I said I can't say you did it. I didn't see you do it, but I know you either did it or had it done.
Q. Did he reply?
A. I said now what will you do about the front and he said I don't want to talk about it. I don't want to talk about it, I don't want to talk about it and that was the end of our conversation.
No evidence was offered to show that defendant caused the damage to plaintiff's property as shown in P-38.
Defendant objected to the offer of the photograph in evidence because no allegation had been made regarding the damage to plaintiff's lawn. Plaintiff's counsel agreed, saying "there is no claim being made for the damage, that is liquidated claim for the damage done to the front lawn." The judge then interjected the comment: "It goes to the state of mind, is that what you're saying?" Plaintiff's counsel responded: "It goes to the state of mind, to the intentions of this defendant from the beginning."
The judge then allowed P-38 into evidence with this comment:
Ladies and gentlemen, just so that you know what we're talking about, this photograph and the testimony about the damage to the front yard is not being offered so that you would award any damages for for injury to the front yard. It is offered only to show the state of mind of the defendant during the time.
Plaintiff now asserts on appeal that the colloquy between the principals justified allowing P-38 into evidence as a species of adoptive admission. Evid.R. 63(8)(b). That rule provides that "a statement is admissible against a party, ... (b) if the party with knowledge of the content of the statement has, by words, or other conduct, manifested his adoption of it or his belief in its truth." Ibid. Defendant's alleged refusal to discuss the alleged vandalism on the telephone was not an admission of its truth, as plaintiff himself did not actually directly accuse defendant of the vandalism during the conversation, and defendant himself had no duty to respond in the circumstances.
Our Supreme Court has noted that the "adoptive admission" exception "must be used with caution and only when the trial *155 judge is satisfied preliminarily that all conditions for its application have been established by the proponent." Greenberg v. Stanley, 30 N.J. 485, 498-499, 153 A.2d 833 (1959); cf. State v. Thompson, 59 N.J. 396, 408-410, 283 A.2d 513 (1971) (inculpatory nature of conversation between defendant and another was "inescapable"). In these circumstances, we conclude that a reply in the form of an outright denial was not called for from the defendant, the failure of which would subject him to the type of damaging evidentiary admission contemplated by the exception.
Presumably, the trial judge admitted P-38 as evidence of another "civil wrong" to show defendant's state of mind. He did this supposedly to show defendant's propensity or disposition to commit such wrongs against plaintiffs; however, in so doing he failed to consider the safeguards of Evid.R. 55. See also Evid.R. 8. Since there was no evidence that defendant committed the civil wrong, Evid.R. 55 itself could not justify admissibility. When an offer of this type of evidence is made, the judge should conduct an Evid.R. 8 hearing, out of the presence of the jury, on threshold admissibility. In criminal cases, the standard of proof in determining whether these prior events did in fact occur is "by the clear and convincing evidence doctrine." State v. Wilson, 158 N.J. Super. 1, 5-6, 385 A.2d 304 (App.Div. 1978), certif. den. 79 N.J. 473, 401 A.2d 229 (1978); McCormick, Evidence § 190 at 564 (3rd 1984); Buinno, Current N.J. Rules of Evidence, Comment 3 to Evid.R. 55 at 473 (1989). We think that a preponderance of evidence burden, the routine civil burden, is sufficient in a civil case.
Even though we disapprove the admission of P-38, we conclude that the error was harmless with regard to the remaining question before us, whether the plaintiff's verdict on the nuisance count, $20,000 compensatory and $2,000 punitive, should be reversed. As we construe the record, defendant did while testifying deny participating in the alleged vandalism of plaintiffs' lawn and property and effectively denied having *156 made any admissions by silence or evasion. Moreover, the jury had the opportunity to hear not only the very tenuous, if not nonexistent, nature of the alleged adoptive admission as alleged by plaintiff but also defendant's own version of the telephone conversation, during which he also made references to vandalism on his own property by unknown persons. With these considerations in mind, we are satisfied that the error did not taint the jury's verdict on nuisance. R. 2:10-2.
The verdict was based on clearly established acts of defendant which fully support the nuisance theory. See Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. 438, 448-449, 149 A.2d 599 (1959); Rose v. Chatkin, 187 N.J. Super. 210, 216-217, 453 A.2d 1378 (Ch.Div. 1982). Plaintiff did not exploit the improperly admitted P-38 on summation to stir the jury's emotions. The verdict on the nuisance count, particularly as to punitive damages, was moderate in amount and reflected no likelihood of distortion from the evidentiary error. Alone, this erroneous ruling on admissibility is not sufficient to command a new trial where we are otherwise convinced that substantial justice has been done by the verdict. See Gaido v. Weiser, 115 N.J. 310, 311, 558 A.2d 845 (1989).

III
We are satisfied that the remaining relevant points raised by defendants on this appeal are clearly without merit and require no discussion. They are: (1) that the voir dire of the jury was inadequate, (2) that use of the matrimonial affidavits and cross-examination of Officer Spetz was error and (3) that the nuisance count was unproved as matter of law. R. 2:11-3(e)(1)(E).

IV
The next point requiring discussion on this appeal and cross-appeal is the propriety of the trial judge's dismissal of the Seventh Count of plaintiffs' complaint, the Count for "intentional infliction of emotional distress." The complaint specifically *157 alleged that plaintiffs "suffered severe and debilitating emotional shock and trauma." We conclude that the trial judge properly removed this count from the jury.
We are guided by the standards in Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 544 A.2d 857 (1988), decided five months after the trial of this case. In Buckley, Justice Pollock described the requisites for such a claim:
Generally speaking, to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe. Initially, the plaintiff must prove that the defendant acted intentionally or recklessly. For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress. Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow.
Second, the defendant's conduct must be extreme and outrageous. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Third, the defendant's actions must have been the proximate cause of the plaintiff's emotional distress. Fourth, the emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it." By circumscribing the cause of action with an elevated threshold for liability and damages, courts have authorized legitimate claims while eliminating those that should not be compensable.
The severity of the emotional distress raises questions of both law and fact. Thus, the court decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved. When conduct is directed at a third party, proof of bodily harm is required, but when the intentional conduct is directed at the plaintiff, he or she need not prove any physical injury. It suffices that the conduct produce emotional distress that is severe. [Buckley, 111 N.J. at 366-367, 544 A.2d 857 (citations omitted).]
The judge concluded that a jury could find that defendants' conduct was "extreme and outrageous." However, after considering the testimony and all reasonable inferences, he decided that there was not enough evidence of severe emotional distress to create a case for the jury. He said:
I tend to agree that there has been less than enough on  in this case on that second aspect of the intentional infliction count. I don't think we have any real evidence of severe emotional distress. We have certainly some emotional distress. I don't doubt that. But we don't really have any, as far as I recall, anything severe in the sense that people were  even the fear seemed to be *158 downplayed considerably. We do have a situation where it seemed that the Plaintiffs were able to live with the problem fairly well. Although there's no question that it was an annoyance and bothersome and caused them upset, that type of thing. I think the evidence is not sufficient on the severe emotional aspect to send this cause of action to the Jury. So I'm going to take this one away from the Jury.
We agree and affirm. We do not think that a cause of action was proved under the Buckley test.
Finally, the plaintiffs' claim of error in not submitting to the jury the claims on Count Three and Four (malicious abuse of process) is clearly without merit, R. 2:11-3(e)(1)(E), both substantively and for the reasons given in I. In view of our dispositive rulings in I and II, we need not consider any other points raised on this appeal.
On appeal, reversed in part and affirmed in part; remanded for entry of judgment of dismissal on Count Six (defamation); the judgment on Count Five (nuisance) is affirmed. On the cross-appeal, affirmed.
NOTES
[1] Although John and Thomas Paschal were both named as defendants, Thomas was reportedly in military service at the time of these proceedings and his status as a participating defendant is thus unclear.