[Civ. No. 36721. Second Dist., Div. One. Dec. 31, 1970.]

UTAH HOME FIRE INSURANCE CO., Plaintiff and Respondent, v. FIREMAN'S FUND INSURANCE COMPANY, Defendant and Appellant.

### COUNSEL

John H. Cartwright, Jr., for Defendant and Appellant.

Kurlander, Solomon & Hart, William A. Kurlander and Stephen A. Silver for Plaintiff and Respondent.

### OPINION

**LILLIE, Acting P. J.**—Each of the parties issued policies of automobile liability insurance with uninsured motorist coverage pursuant to section 11580.2, Insurance Code; both policies were in force on the date of the accident hereinafter described. Plaintiff's insured was Joseph Patin; defendant's policy covered one Robert. This action sought a declaratory judgment that the uninsured motorist coverage under plaintiff's policy did not apply to the injuries sustained by Patin as a result of the accident and a further declaration that such loss should be borne by defendant under the similar policy issued by it to Robert. The trial court gave plaintiff judgment as prayed; defendant appeals.

No oral testimony was received by the trial court; the matter was submitted for decision on the depositions of each insured, the police report prepared after the accident and the following stipulations: If called, each deponent would testify exactly as he did in his deposition; if called, the police officer, who prepared the accident report, would testify that each insured recited his version of the accident in the manner contained in the report; and finally, each policy had uninsured motorist coverage pursuant to section 11580.2, Insurance Code, and the automobile covered in defendant's policy, a 1967 Cadillac, was the automobile involved in the accident.

From the depositions and police report it appears that Robert was in the driver's seat of his Cadillac, parked parallel to the curb and facing west on a street running east and west. He was hailed by Patin, his friend, who was driving east on the same street. Robert remained in his parked position while Patin turned his car around and parked it at the curb two vehicles behind

Robert's Cadillac. Patin left his car, proceeded along the street to the left front door of the Cadillac, and commenced a conversation with Robert.

There is a factual discrepancy (the only one encountered by the trial court) concerning Patin's precise position during the commencement of the conversation—Patin said he was leaning into the Cadillac with his hands on the door of the open window on the driver's side; Robert stated that although Patin had his hands on the window sill, he was not leaning inside his automobile. While Patin was in one or the other of these two precise positions, he was alerted by Robert to the approach of a westbound vehicle unusually close to his Cadillac. To avoid being hit, Patin straightened up but was flattened against the Cadillac by the westbound car which did not stop and was never identified.

The trial court was called upon to determine which of the two policies covered the accident, thus making the issuing company primarily liable, but more specifically, whether plaintiff's policy excluded coverage by virtue of the following provision which, in the language of section 11580.2, Insurance Code, sets forth certain exemptions: "(c) The insurance coverage provided for in this section does not apply: (1) . . . (2) To bodily injury of the insured while in or upon or while entering into or alighting from an automobile other than the described automobile if the owner thereof has insurance similar to that provded in this section." In its memorandum of decision the trial court held that Patin was "standing by the front left door talking to the insured (Robert). Whether he was physically 'in' or not to the extent of milimeters [sic] is insignificant. In the broad sense, and as anticipated by Insurance Code Sec. 11580.2(a) he was 'upon' the vehicle"; cited was *Christoffer* v. *Hartford Acc. etc. Co.,* 123 Cal.App.2d Supp. 979 [267 P.2d 887].

Appellant now contends that the *Christoffer* decision is not in point. In that case the injured party had a flat tire while driving his sister's car; while his hand was on the rear wheel, and presumably in the process of changing the tire, he was struck by another automobile. The reviewing court determined that the injured person was "upon" the vehicle within the meaning of a clause in Hartford's policy providing for payment of medical and related services for each person sustaining injury caused by accident, "while in or upon . . . the automobile if the automobile is being used by the Named Insured or with his permission." (Pp. 979-980.) Unlike *Christoffer,* argues appellant, in the instant case the injured person was not a permissive user; neither was he, nor had he been, making any use of Robert's Cadillac; nor was there any evidence that he intended to make use of Robert's car.

These latter assertions adopt the reasoning of the Virginia court in *Pennsylvania National Mutual Cas. Ins. Co.* v. *Bristow,* 207 Va. 381 [150 S.E.2d

125], which, it is argued, is persuasive in the claimed absence of California decisional law covering a similar fact situation. Bristow had been a passenger in a panel truck which was stopped by its driver to lend assistance to an elderly couple (named Zahn) whose car had stalled on the side of the highway. He walked back six truck lengths to the Zahn car and, standing in front of the vehicle, proceeded to raise the hood and check the wiring. While he was so engaged the Zahn vehicle was struck in the rear by another car from which collision Bristow sustained injuries. Since the driver of the third car was uninsured, Pennsylvania National sought (as does plaintiff here) to shift the Bristow coverage to another insurance company, Allstate, which had issued the Zahns a policy with an uninsured motorist endorsement. Under the Allstate policy, the word "insured" included "any other person while occupying an insured automobile." (P. 127.) The word "occupying" was further defined to include "in or upon or entering into or alighting from." (P. 127.) In light of the above, and with reference to Bristow, the court concluded that "Commendable though his actions might have been, it cannot be said that he was 'upon' the vehicle in the sense of 'occupying' it, within the meaning of the language of Allstate's policy." (*Supra*, p. 128.)

Here, unlike the policy in the Virginia case, the parties have stipulated that the pertinent exclusionary clause contains the exempting language found in section 11580.2, subdivision (c), Insurance Code; in such regard, it is significant that no use is made therein of the word "occupying." However, it is further significant that the word "occupying" is found in another of the "Exemptions" from coverage (not relied on here) in the same subdivision: "(6) To bodily injury of the insured while occupying a motor vehicle owned by an insured, unless the occupied vehicle is an insured motor vehicle." (Ins. Code, § 11580.2, subd. (c)(6).) Under the maxim or rule of "expressio unius est exclusio alterius," it has been stated that "if a statute contains an express exception it will be presumed that no other exceptions were intended." (45 Cal.Jur.2d, Statutes, § 133.) True, it has also been stated that the above maxim " 'will not be utilized to contradict or vary a clear expression of legislative intent. . . .' " (*Williams* v. *Los Angeles Metropolitan Transit Authority,* 68 Cal.2d 599, 603 [68 Cal.Rptr. 297, 440 P.2d 497]), but the legislative intent in the present case clearly appears to favor the construction urged by plaintiff: "Thus we have uniformly held that 'the *entire* automobile financial responsibility law must be liberally construed to foster its main objective of giving "monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others." ' [Citations.] As we concluded in *Interinsurance Exchange* v. *Ohio Cas. Ins. Co., supra,* [58 Cal.2d 142, (23 Cal.Rptr. 592, 373 P.2d 640)], 'The pattern is clearly discernible:

a desire on the part of the judiciary and the Legislature to not only prevent the astronomical accident toll in this state, but also to provide compensation for those injured through no fault of their own.' " (*Barrera* v. *State Farm Mut. Automobile Ins. Co.*, 71 Cal.2d 659, 671 [79 Cal.Rptr. 106, 456 P.2d 674].) It is not here contended, of course, that Patin was not lawfully using the street at the time in question or that he was guilty of negligence as a matter of law.

■ With the concept of "occupying" eliminated, we consider whether Patin was "in" or "upon" Robert's car when the accident occurred; and, if so, whether he was "using" the car within the meaning of the *Christoffer* case and others to be mentioned. Findings not having been demanded, by its judgment the trial court determined that Patin was "in and upon" the Cadillac at the time he was struck by a hit and run automobile. That being so, we need only point to the court's observation in *Cocking* v. *State Farm Mut. Automobile Ins. Co.*, 6 Cal.App.3d 965 [86 Cal.Rptr. 193], that " 'upon' includes 'in or into close proximity.' " (P. 969.) There remains the more difficult question whether Patin's conversation with Robert in the precise position above described constituted a use of Robert's car with the latter's permission. Both he and Patin agree that Patin's sole purpose in standing at the side of the vehicle was to carry on a conversation with reference to a fishing trip. Prior thereto, Robert had ostensibly invited that conversation by remaining in his parked position after being hailed by his friend. In its memorandum of decision, in addition to the portion thereof already quoted, the trial court stated that "The reason for Patin's position was the incident of Robert's automobile." In other words, Patin would not have been in the path of the "phantom" car if Robert had not been seated in his parked Cadillac. Since the Cadillac was the essential factor that placed the parties in their respective positions at the time of the accident, Patin was "using" and "upon" the car within the meaning of the policy and section 11580.2.

In conclusion, we deem the following statements pertinent to the problem here presented: "Although the word 'use' must be given an all-inclusive connotation, there must be a causal connection between the use and the injury. The automobile is so much a part of the American life that there are few activities in which the 'use of an automobile' does not play a part somewhere in the chain of events. . . . The test for determining the existence of the requisite causal connection has been expressed in varying language. It has been stated that the resulting injury must be a 'natural and reasonable incident or consequence of the use of the [automobile] for the purposes shown by the declarations, though not foreseen or expected. . .' and that the injury cannot be said to arise out of the use of an automobile

'if it was directly caused by some independent act, or intervening cause wholly disassociated from, independent of and remote from the use of the [automobile].' [Citations.]" (*Truck Ins. Exch.* v. *Webb,* 256 Cal.App.2d 140, 145-146 [63 Cal.Rptr. 791].) In this regard we necessarily interject the observation that it is an unfortunate fact of American life that persons continue to assume the position taken by Patin at the time of the accident. We also agree with the determination reached in *Fidelity & Casualty Company of New York* v. *Lott* (5th Cir. 1960) 273 F.2d 500, cited but distinguished in *Webb* with an accompanying summary of the facts and holding.[1]

The judgment is affirmed.

Thompson, J., concurred.

**GUSTAFSON, J.**—I concur in the judgment.

Patin, injured when struck by an uninsured motorist, was a "named insured" in the policy issued by plaintiff. Robert was a "named insured" in the policy issued by defendant covering the automobile in which Robert was seated when Patin was struck. Each policy included uninsured motorist coverage (Ins. Code, § 11580.2) in the minimum statutory amount of $15,000 for injury to one person and $30,000 for injuries to two or more persons in one accident. (Veh. Code, § 16059.)

With respect to coverage of an insurance policy, the rule is that the policy should be broadly construed with any doubtful case being resolved in favor of inclusion under the terms of the policy. With respect to an exclusion clause in a policy, the rule is that it should be narrowly construed with any doubtful case being resolved against exclusion from the policy.

Patin's policy concededly covered him unless he was injured "while in or upon or while entering into or alighting from an automobile other than [his] automobile if the owner thereof has insurance similar to that provided in this section." (Ins. Code, § 11580.2, subd. (c)(2).) There is no room for a narrow construction of the exclusion clause because by its terms if Patin is *included* under Robert's policy, he is *excluded* under his own policy.

---

[1]"The only case cited by defendants where liability for an act unrelated to the ordinary use of an automobile was held to be covered is *Fidelity & Cas. Co.* v. *Lott* (5th Cir. 1960) 273 F.2d 500. In that case the insured while on a deer hunt stopped his vehicle, got out, and using the automobile as a gun rest, negligently fired through the roof of the car causing the bullet to ricochet and strike one of the occupants. The court held there was an actual physical use of the vehicle and that any ambiguity in the policy respecting the meaning of the word 'use' should be resolved in favor of the insured." (*Truck Ins. Exch.* v. *Webb,* 256 Cal.App.2d 140, 148 [63 Cal.Rptr. 791].)

Robert's policy, in addition to certain persons described as "insureds," covers under the uninsured motorist coverage "any other person while in or upon or entering into or alighting from" Robert's motor vehicle "if the motor vehicle is used by the named insured or with his permission or consent, express or implied. . . ." (Ins. Code, § 11580.2, subd. (b).) Thus the real question is whether Patin, even if he had no insurance himself, could collect under Robert's policy.

I think that the cases cited by the court compel the conclusion that Patin was "upon" Robert's motor vehicle. The court says that the next question, which it answers in the affirmative, is "whether [Patin] was 'using' the car." I am not convinced that this is the question. The statute says that Patin is covered while he is "upon" Robert's vehicle "if the motor vehicle is used by the named insured or with his permission or consent, express or implied. . . ." (Ins. Code, § 11580.2 subd. (b).) It seems to me that Robert was using his own vehicle while he sat in it conversing with Patin. Under the principle of broad construction of coverage provisions, I think it is unnecessary to determine whether Patin was using Robert's motor vehicle.

The result which I think is compelled by the statute is in my opinion unfair. Suppose Robert and his wife had been occupying Robert's automobile while Patin was conversing with them. Suppose that Patin, Robert and Robert's wife were injured, each in the amount of $15,000. Each would receive only $10,000. (*Darrah* v. *California State Automobile Assn.* (1968) 259 Cal.App.2d 243 [66 Cal.Rptr. 374].) Robert is thus deprived of the full coverage for which he has paid insurance premiums.

Patin is no better off than if he had not had uninsured motorist coverage. He gets nothing from his own policy. And if Patin had carried uninsured motorist coverage in the amount of $150,000 for one person, and if he had been damaged in the sum of $100,000, he would nevertheless recover only under Robert's policy which is limited to $15,000. But if fortuitously Robert had not carried uninsured motorist coverage (and he is not required by law to do so), then Patin would have received the proceeds of his policy for which he paid the premiums.