937 F.2d 1415
 STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., a corporation,
Plaintiff-Appellee,
v.
Walter Allen DAVIS, and Brian J. Painter, Defendants,
and
Charles R. Keukelaar, Shellie A. Keukelaar, Charles Rubin
Keukelaar, a minor, by Shellie A. Keukelaar, his
Guardian ad litem, Defendants-Appellants.
 No. 89-56044.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 7, 1990.
Decided July 1, 1991.
 
 1
 William B. Hanley, McCormick, Kidman & Behrens, Costa Mesa, Cal., for defendants-appellants.
 
 
 2
 Richard C. Turner, Mary K. Lenahan, and Robert D. Brugge, Spray, Gould & Bowers, Los Angeles, Cal., for plaintiff-appellee.
 
 
 3
 Appeal from the United States District Court for the Central District of California.
 
 
 4
 Before D.W. NELSON and REINHARDT, Circuit Judges, and SINGLETON,* District Judge.
 
 SINGLETON, District Judge:
 
 5
 State Farm Mutual Automobile Insurance Co. ("State Farm") brought this action in federal district court seeking a declaratory judgment. State Farm alleged that a policy of automobile insurance it had issued to Walter Allen Davis ("Davis") did not cover an incident where Davis shot and injured Charles Keukelaar ("Keukelaar"), the driver of another vehicle. Davis was a passenger in his own vehicle, a 1984 GMC van, when the incident occurred. The district court had jurisdiction based on diversity of citizenship, 28 U.S.C. Sec. 1332(a)(1) (1988). We have jurisdiction under 28 U.S.C. Sec. 1291 (1988).
 
 
 6
 In this case we are asked to determine whether a highway shooting "result[ed] from the ownership, maintenance or use" of the assailant's automobile. On the specific facts of this case, we conclude that the shooting did result from the use of the vehicle and therefore reverse a summary judgment absolving the automobile insurance carrier from liability to the Keukelaars.
 
 BACKGROUND
 
 7
 The facts are not in dispute. Davis, a United States Marine, purchased a 1984 GMC van while residing in the State of Tennessee. State Farm issued Davis a policy of automobile insurance, covering the vehicle. Thereafter, Davis was transferred to the United States Marine Corps Air Station, Tustin, California. He retained the vehicle with its Tennessee license and registration, as well as his Tennessee driver's license.
 
 
 8
 Davis was scheduled for sea duty and wished to store some personal property including several handguns at his mother's home in San Jose, California. On November 23, 1984, Davis and two fellow Marines, Brian Painter ("Painter") and David Roberts ("Roberts"), were transporting this property in Davis's GMC van at the time of the shooting. Painter was driving and Davis was riding in the front passenger seat. Roberts occupied the rear seat. The three were proceeding north on Interstate Highway 5 when they were passed by a Corvette driven by Keukelaar. Shellie Keukelaar ("Shellie"), who was pregnant, was riding as a passenger in the Corvette. Davis told Painter to overtake and pass the Corvette. As the van approached the rear of the Corvette, Davis fired a .44 caliber revolver out his window striking and shattering the rear window of the Corvette. The bullet continued into the passenger compartment and struck Keukelaar in the back of the head rendering him unconscious. Shellie was able to bring the Corvette to a stop. Davis and his friends continued driving. The Keukelaars eventually contacted state authorities. Sometime thereafter, Davis and his friends were apprehended. Davis was subsequently convicted of criminal assault in state court.
 
 
 9
 The Keukelaars sued Davis and Painter in state court and State Farm brought this action in federal district court seeking a declaration that it did not provide coverage to Davis and Painter for the Keukelaars' injuries. State Farm sought summary judgment on the ground that the injuries were not "caused by an accident[1] resulting from the ownership, maintenance or use of [Davis's] car...." The district court agreed and entered judgment in State Farm's favor. This appeal followed.
 
 DISCUSSION
 I. Standard of Review
 
 10
 "A grant of summary judgment is reviewed de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989); cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the law." Hydro Systems, Inc. v. Continental Ins. Co., 929 F.2d 472, 473 (9th Cir.1991). We also review issues of insurance contract interpretation de novo. See American States Ins. Co. v. Borbor, 826 F.2d 888, 890 (9th Cir.1987).
 
 II. Applicable Law
 
 11
 At the time of the shooting, Davis had a current State Farm insurance policy issued and delivered to Davis in Tennessee. The shooting occurred in California where the Keukelaars reside. In the trial court and in their briefs in this court, both parties proceeded on the assumption that California law governed the interpretation of the insurance policy. During oral argument State Farm argued for the first time that the law of Tennessee governs the interpretation of the provisions of its policy.[2] To resolve this question we look to the choice of law rules of California, the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941); Federal Insurance Co. v. Scarsella Bros., Inc., 931 F.2d 599, 602 (9th Cir.1991).
 
 
 12
 California Civil Code Sec. 1646 (1985) provides:
 
 
 13
 Law of Place. A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.
 
 
 14
 There is no need to choose between the laws of California and Tennessee if they are identical. Hurtado, 11 Cal.3d at 580, 114 Cal.Rptr. at 109, 522 P.2d at 669; International Serv. Ins. Co. v. Gonzales, 194 Cal.App.3d 110, 116, 239 Cal.Rptr. 341, 344 (1987). We determine de novo the applicable law of California and Tennessee in this diversity case. Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); In Re Complaint of McLinn, 739 F.2d 1395 (9th Cir.1984) (en banc). In making this determination we look to all available data. See West v. American Tel. & Tel. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). In the absence of determinative decisions of each state's highest court we look to intermediate court decisions. State Farm Fire and Casualty Co. v. Abraio, 874 F.2d 619, 621 (9th Cir.1989). We also look to well-reasoned decisions from other jurisdictions. Takahashi v. Loomis Armored Car Serv., 625 F.2d 314, 316 (9th Cir.1980). Ultimately we must use our own best judgment in predicting how the respective state supreme courts would interpret this insurance contract. If they would reach inconsistent decisions then we must apply California's choice of law rules to resolve the conflict.
 
 
 15
 We have not been cited to any Tennessee or California court decisions that are directly on point. Nevertheless, we have reviewed analogous cases and are satisfied that the laws of both states are the same. Compare State Farm Mutual Automobile Ins. Co. v. Partridge, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973) (handgun accidentally discharged wounding a passenger while vehicle was being driven off-road; accident held to arise out of the use of the vehicle and therefore was within automobile insurance coverage) with Travelers Ins. Co. v. Aetna Casualty & Sur. Co., 491 S.W.2d 363 (Tenn.1973) (shotgun accidentally discharged while being loaded into vehicle; accident held to arise out of loading and use of vehicle and therefore was within automobile coverage).
 
 
 16
 State Farm does not cite any Tennessee authority for the proposition that Tennessee interprets insurance contracts differently than California. However, it does argue that all of the California cases discussing fact situations similar to the one in this case deal with policy provisions which cover bodily injury caused by an occurrence "arising out of the use" of a vehicle while the policy in this case covers bodily injury caused by an accident "resulting from the use" of a vehicle.
 
 
 17
 In its brief State Farm argued that the phrase "arising out of the use" of an insured vehicle provides broader coverage than the phrase "resulting from the use" of an insured vehicle. It cites no authority for this proposition. In response, the Keukelaars argued in their reply brief that a California statute, California Insurance Code Sec. 11580.1(a) (1988), requires automobile policies issued in California to cover liability "arising out of the use" of an insured vehicle. State Farm disputed at oral argument the applicability of this statute to an insurance policy issued and delivered in Tennessee. See Gonzales, 194 Cal.App.3d 110, 239 Cal.Rptr. 341; Wheeling v. Financial Indemn. Co., 201 Cal.App.2d 36, 19 Cal.Rptr. 879 (1962).
 
 
 18
 We find it unnecessary to resolve this last minute dispute between the parties regarding the applicability of Sec. 11580.1(a). We are satisfied that both California and Tennessee require a slight causal connection between an insured vehicle and a shooting injury before the injury may be held to "arise out of the use" of the insured vehicle. Travelers, 491 S.W.2d at 366; Partridge, 10 Cal.3d at 100, 109 Cal.Rptr. at 815, 514 P.2d at 127. This slight causal connection in our view is also what reasonable men and women would understand the phrase "resulting from the use" of an insured vehicle to mean. See AIU Ins. Co. v. Superior Court, 51 Cal.3d 807, 818, 274 Cal.Rptr. 820, 831, 799 P.2d 1253, 1264 (1990). We are also satisfied that it is the meaning most consistent with the language and intent of the contracting parties and comports with the usual, natural and ordinary meaning of the terms in question. See Blaylock & Brown Constr., Inc. v. AIU Ins. Co., 796 S.W.2d 146, 149 (Tenn.App.1990). Having concluded that the law of California and the law of Tennessee are the same in all relevant particulars we apply the law of the forum state, California, to the issues presented in this case.
 
 III. Coverage
 
 19
 The policy which State Farm issued to Davis contains the following relevant language:
 
 We will:
 
 20
 1. pay damages which an insured becomes legally liable to pay because of:
 
 
 21
 a. bodily injury to others.
 
 
 22
 . . . . .
 
 
 23
 caused by accident resulting from the ownership, maintenance or use of your car....
 
 
 24
 Policy No. 355 5075-D23-42A, Policy Form 9942.2 Sec. 1 (emphasis added).
 
 
 25
 In Partridge, the Supreme Court of California addressed similar language in an automobile insurance policy. The court found coverage where a gun discharged injuring a passenger while the vehicle was being driven off-road in pursuit of rabbits. The court noted that a "use" of a vehicle need not be the proximate cause of an injury in order to require coverage.[3] It was sufficient if some minimal causal connection between the vehicle and an injury existed. Partridge, 10 Cal.3d at 100 n. 7, 109 Cal.Rptr. at 815 n. 7, 514 P.2d at 127 n. 7.
 
 
 26
 In addition, the court recognized that other courts had denied coverage in "shooting" cases where there was absolutely no causal relationship between the firing of the gun and the use of the automobile but concluded that coverage had been found where the insured vehicle did bear some, albeit slight, causal connection with the shooting injury. Id. at 101 n. 8, 109 Cal.Rptr. at 816 n. 8, 514 P.2d at 128 n. 8.
 
 
 27
 In a more recent case, an intermediate California court of appeal found coverage where some boys were throwing eggs from a moving vehicle and injured a pedestrian. The court noted that the movement of the vehicle enhanced the speed of the eggs thrown and therefore the risk of injury to those hit. The court also noted that the vehicle aided the boys in initially avoiding capture while "egging." National Am. Ins. Co. v. Insurance Co. of N. Am., 74 Cal.App.3d 565, 140 Cal.Rptr. 828 (1977).
 
 
 28
 These cases persuade us that the Supreme Court of California would find coverage in this case. Davis's shooting of Keukelaar was not merely incidental to his use as a passenger of the GMC van. At the time of the shooting, Keukelaar was proceeding rapidly down the highway in his Corvette. Had Painter not heeded Davis's request to overtake and pass the Corvette, Davis would not have been in a position to shoot at Keukelaar. Further, it is not unreasonable to assume that Davis counted on the speed of the van to escape after the shooting. Under the facts of this case, the van was more than minimally connected with the injuries Keukelaar suffered.
 
 
 29
 We are reinforced in this conclusion, by a decision of the Minnesota Supreme Court, based on similar facts, which we believe the Supreme Court of California would find persuasive. See Continental Western Ins. Co. v. Klug, 415 N.W.2d 876 (Minn.1987).[4] The facts of Klug are particularly instructive. Klug, while driving his vehicle home from work, was chased by Bahe a significant distance down the highway. Bahe menaced Klug with a shotgun before shooting him. The court considered three factors significant in determining whether coverage existed: first, the causal nexus between the vehicle and the shooting; second, whether an intervening act broke the causal link; and third, whether the assailant was using the vehicle for transportation at the time of the shooting and whether the driving facilitated the shooting. The court found coverage and concluded that the vehicle was an active accessory to the shooting since Bahe had to keep up with Klug and drive for two miles in order to shoot him.
 
 
 30
 The court rejected the argument that Bahe's intentional act in shooting Klug broke the causal link. It reasoned that had Bahe drove ahead and waited to ambush Klug, the causal link might have been broken. However, it concluded that Bahe's driving and shooting were inextricably linked. In making this determination the court apparently reasoned that Bahe was using his car to keep abreast of Klug at the time he shot him. Finally, the court concluded that Bahe was not merely using his vehicle as a gun rest or as the situs for an assault, but as a necessary part of the assault. The court noted that Bahe used his car to maneuver himself and Klug into position for the successful assault. Id. at 878-79.
 
 
 31
 The same three considerations are present in this case. Painter had to chase Keukelaar so that Davis could shoot at him. Davis did not leave the vehicle, but shot Keukelaar while both were traveling down the highway. Finally, Painter had to drive the van into position next to the Corvette, giving Davis the opportunity to fire his gun. The presence of these factors supports our conclusion that the vehicle was more than incidental to this shooting.
 
 
 32
 We find the cases cited by State Farm distinguishable or unpersuasive.[5] Most involve situations where a tortfeasor used a vehicle to get to the scene of the tort but had exited the vehicle before committing the tort. Illustrative are Truck Ins. Exch. v. Webb, 256 Cal.App.2d 140, 63 Cal.Rptr. 791 (1967) (driver used vehicle to transport boxes to building, removed them and started fire which damaged building) and United Services Auto. Ass'n v. Ledger, 189 Cal.App.3d 779, 234 Cal.Rptr. 570 (1987) (two motorists in separate vehicles became involved in a dispute while driving down the highway, stopped and exited their respective vehicles in order to fight and one stabbed the other).
 
 
 33
 Closely related are cases in which the vehicle is at rest at the time of the incident and plays no real part in bringing about the harm. See Aetna Casualty and Sur. Co. v. Safeco Ins. Co., 103 Cal.App.3d 694, 163 Cal.Rptr. 219 (1980). We agree with the Supreme Court of Minnesota that a tortfeasor leaving his vehicle prior to committing the tort might serve to break the causal nexus between the use of the vehicle and the subsequent tort. In the case of the vehicle at rest, we might conclude that there was absolutely no causal relationship between the use of the vehicle and the subsequent shooting. Partridge, 10 Cal.3d at 101 n. 8, 109 Cal.Rptr. at 816 n. 8, 514 P.2d at 128 n. 8. Neither of these situations is present here.
 
 
 34
 Additional cases from this and other jurisdictions have reached varying decisions in deciding whether shooting incidents involved the "use" of an insured vehicle. Those that deny coverage are in our view distinguishable. First, there are the cases similar to those discussed above in which an assailant left his vehicle before assaulting the other party. See, e.g., Nationwide Mut. Ins. Co. v. Brown, 779 F.2d 984 (4th Cir.1985); State Farm Mut. Auto. Ins. Co. v. Fernandez, 767 F.2d 1299 (9th Cir.1985); Detroit Auto. Inter-Ins. Exch. v. Higginbotham, 95 Mich.App. 213, 290 N.W.2d 414 (1980). Second are the closely related cases where the vehicle merely provides a situs for the tort. See, e.g., Fowler v. State Farm Mut. Auto. Ins. Co., 548 So.2d 830 (Fla.App.1989); Vanguard Ins. Co. v. Cantrell, 18 Ariz.App. 486, 503 P.2d 962 (1972). Finally, there are the cases from jurisdictions that require a much stronger causal relationship between the injury and the use of the vehicle than California requires. See, e.g., Government Employees Ins. Co. v. Melton, 357 F.Supp. 416 (D.S.C.1972), aff'd, 473 F.2d 909 (4th Cir.1973); Wausau Underwriters Ins. Co. v. Howser, 727 F.Supp. 999 (D.S.C.1990) (recognizing that California and Minnesota require less of a causal nexus to establish that an injury arises out of the use of an insured vehicle than is required in other jurisdictions such as South Carolina).
 
 
 35
 In conclusion, we are satisfied that Painter's and Davis's use of the GMC van insured by State Farm had more than a minimal causal connection with the incident leading to Keukelaar's injuries.
 
 
 36
 We therefore REVERSE the decision of the District Court and REMAND this case in order for that court to consider State Farm's other defenses.
 
 
 
 *
 The Honorable James K. Singleton, Jr., United States District Judge for the District of Alaska, sitting by designation
 
 
 [1]
 The trial court granted State Farm summary judgment on two grounds: 1) The shooting did not result from the use of a vehicle; and 2) Davis's shooting of Keukelaar was not an accident. Both parties assured us at oral argument that the second issue was not ripe for decision because both Davis, as named insured, and Painter, the driver, as additional insured, could claim coverage under the policy. In the parties' view, further factual development is necessary before the trial court can determine whether Davis's act was intentional, whether Keukelaar's injuries resulted from an accident and whether Painter's conduct figures in resolving these questions. Both parties asked us not to rule on the question of whether this incident involved an accident and the related question of whether California Insurance Code Sec. 533 (1972), which prohibits insurance coverage for losses caused by the willful act of the insured, applies in this case. While we have the power to affirm on the basis that the incident was not an accident, cf. Badea v. Cox, 931 F.2d 573, 577 n. 2 (9th Cir.1991), we accept the parties' request and decline to do so. Therefore, we do not address the question whether Davis's acts were intentional or willful and if so, whether Keukelaar's injuries might nevertheless have resulted from an accident
 
 
 [2]
 In its complaint for declaratory judgment, State Farm set out the facts regarding the issuance and delivery of the policy in Tennessee. It indicated that the trial court might apply Tennessee law but did not expressly request the court to do so. It does not appear that State Farm referenced Tennessee law in its arguments below. Normally, we would not consider an argument unbriefed and made for the first time during oral argument. Campbell v. Kincheloe, 829 F.2d 1453, 1455-56 n. 1 (9th Cir.1987), cert. denied, 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). We would be particularly hesitant to decide complicated questions of choice of law under these circumstances. See Hurtado v. Superior Court of Sacramento County, 11 Cal.3d 574, 581, 114 Cal.Rptr. 106, 110, 522 P.2d 666, 670 (1974) (emphasis added) ("generally speaking the forum will apply its own [law] unless a party litigant timely invokes the law of a foreign state"). Our conclusion that the laws of Tennessee and California are identical makes it unnecessary to decide the waiver issue
 
 
 [3]
 In defining proximate cause courts generally require that an antecedent event constitute a substantial factor in bringing about a subsequent harm. See Restatement (Second) of Torts Sec. 431 (1965). When the Partridge court said a use of an automobile need not be a proximate cause in order to require coverage as long as it was a minimal cause, we understand it to mean that the causal nexus need not be substantial
 
 
 [4]
 State Farm argues that we should not consider Klug. It reasons that the Second District of the California Court of Appeal relied heavily on Klug in a depublished decision, Nationwide Mut. Ins. Co. v. Munoz, 199 Cal.App.3d 1076, 245 Cal.Rptr. 324 (1988), withdrawn by order of Sup.Ct., (June 30, 1988) (1988 WL 26180, 1988 Cal.LEXIS 128). Munoz involved a shooting between two cars driving down the highway. The coverage in question arose under the uninsured motorists provision of the policy. The court of appeal found that the assailant's vehicle contributed to the assault and consequently, the victim's injuries arose out of "the use" of the vehicle. The court's reasoning paralleled our interpretation of the policy provisions in this case. There was, however, another issue in Munoz which is not present in this case. The gunman's car did not touch the victim's car during the assault. There was therefore a significant question whether there was physical contact between the victim and the assailant's car which is required for uninsured motorist coverage under California Insurance Code Sec. 11580.2 (1988). The court held that the physical contact requirement was met by the bullet hitting the victim. The California Supreme Court denied review of Munoz and ordered it depublished
 The California Constitution, article VI, sec. 14, authorizes the supreme court to order depublication of an opinion ordered published by the court of appeals. See also California Rules of Court 976(c)(2) (Supp.1990). State Farm, citing 9 Witkin, California Procedure (3d ed. 1985), Appeal, Sec. 582 pp. 573-74, suggests that there is a consensus among California lawyers that depublication indicates that the supreme court disapproves of the reasoning of the depublished opinion. It asks us to accept depublication as some evidence that the Supreme Court of California would not find coverage in this case. Cf. Burns v. International Ins. Co., 929 F.2d 1422 (9th Cir.1991) (denial of review by the California Supreme Court provides some indication that the court of appeal correctly decided a case). We are unpersuaded by State Farm's arguments.
 California's depublication procedure does not send clear signals. As former Justice Joseph R. Grodin pointed out, " '[D]epublication' does not mean that the supreme court necessarily disapproves of the underpinnings of the decision. Nor does it mean that the court considers the outcome to be wrong, just as a straight denial of hearing does not necessarily carry with it the court's imprimatur. [p] Depublication is most frequently used when the court considers the result to be correct, but regards a portion of the reasoning to be wrong and misleading." Grodin, The Depublication Practice of the California Supreme Court, 72 Calif.L.Rev. 514, 522 (1984). Since we have no way of knowing which, if either, part of the court of appeal's decision the supreme court felt was defectively reasoned, we hold that the depublication of Munoz should not be considered in determining California law on the coverage issue. In so doing we treat a depublished decision the same way we would treat a decision that the court of appeal initially declined to publish. See Calif.Ct.R. 977(a) (Supp.1990) (non-published opinions "shall not be cited or relied on by a court or a party in any other action or proceeding ...").
 
 
 [5]
 Many of the cases cited by State Farm reason that a prospective purchaser of insurance would not expect to be covered if he shoots someone. This assumption has two components. First, the courts seem to reason most people do not expect insurance to cover their intentional acts. For the reasons set out above we decline to address questions of intent, willfulness and accident in this opinion. See n. 1, supra. Second, the courts assume that people generally do not associate shootings, whether negligent or intentional, with automobile insurance. We would agree that the average purchaser of insurance probably does not expect to shoot anyone or be shot by anyone while driving a vehicle, just as she probably does not expect to be involved in most of the incidents that fill the law reports. Nevertheless, we are satisfied that the ordinary purchaser of automobile insurance, if told his coverage would extend to any incident in which "the insured vehicle did bear some, albeit slight, causal connection with the shooting accident," would conclude that Davis's vehicle did have the requisite causal connection with the shooting of Keukelaar and therefore, was within the coverage provided by Davis's policy. See Partridge, 10 Cal.3d at 101 n. 8, 109 Cal.Rptr. at 816 n. 8, 514 P.2d at 128 n. 8. This is all that the Supreme Court of California would require