[No. E022409. Fourth Dist., Div. Two. Nov. 18, 1999.]

EDWIN B. KRAMER et al., Plaintiffs and Appellants, v.
STATE FARM FIRE & CAUSUALTY COMPANY, Defendant and
Respondent.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of footnote 1 and part II.B.5.

## Counsel

Wallin & Klarich and William W. Bruzzo for Plaintiffs and Appellants.

Horvitz & Levy, Lisa Perrochet, Mitchell C. Tilner; Hughes & Nunn, Randall M. Nunn and E. Kenneth Purviance for Defendant and Respondent.

## OPINION

**RICHLI, Acting P. J.**—We must decide whether, for purposes of insurance coverage, child molestation is an injury arising from the "ownership, maintenance, or use" of the premises on which the molestation occurs. We conclude that, absent a causal relationship between the use of the premises and the molestation, there is no coverage.

### I

### FACTUAL AND PROCEDURAL BACKGROUND

In 1993, appellants Edwin B. and Dorothy Kramer purchased two rental dwelling policies from respondent State Farm Fire and Casualty Company (State Farm) covering residential properties in Grand Terrace and Chino. The policies included "business liability" coverage against claims for accidental injuries arising "from the ownership, maintenance, or use of the insured premises . . . ." The coverage applied to bodily injury, property damage, and "personal injury," which was defined as injury arising out of specified torts such as false imprisonment and defamation. The limit of liability for each policy was $300,000 per occurrence and $600,000 per year.

The Kramers also purchased a State Farm homeowners policy for their residence in Mira Loma. This policy included "personal liability" coverage against claims for bodily injury or property damage, with a limit of $100,000.

In 1994, the Kramers were sued by Mrs. Kramer's daughter, Virginia B.; her husband, John B.; and their four minor children. The B.'s complaint alleged that, during the time the rental dwelling policies and homeowners policy were in effect, Mr. Kramer sexually molested the children at several locations, including the Grand Terrace, Chino, and Mira Loma properties. The complaint also alleged Mrs. Kramer knew of the molestations but failed to protect the children and that both Kramers concealed the molestations and pressured the children not to report them.[1] The complaint charged Mr.

---

[1] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

---

*See footnote, *ante*, page 332.

Kramer with battery and both Kramers with intentional and negligent infliction of emotional distress.

The Kramers tendered the B.'s action (hereafter the underlying action) to State Farm for defense and indemnification. State Farm denied coverage under the rental dwelling policies. However, it defended the Kramers under the homeowners policy.

The underlying action eventually was settled for $165,000. State Farm paid $100,000, the limits under the homeowners policy. The Kramers paid the remaining $65,000.

The Kramers then brought this action against State Farm for bad faith and breach of contract based on State Farm's denial of coverage under the rental dwelling policies. State Farm moved for summary judgment, arguing in part that the rental dwelling policies did not cover the underlying action because the alleged injuries did not arise from the "ownership, maintenance, or use" of the insured premises. The court granted the motion, ruling that the claims in the underlying action fell outside the coverage of the policies[2] and also fell under the exclusion for injury caused by an intentional act of the insured. The Kramers appeal.

II

## DISCUSSION

### A. *Standard of Review*

We independently review the lower court's determinations that no triable issue of fact existed and that State Farm was entitled to judgment as a matter of law. (*Romano* v. *Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 487 [59 Cal.Rptr.2d 20, 926 P.2d 1114].) We may affirm on any legally correct theory, provided the Kramers had an adequate opportunity to address the theory in the lower court. (*Bacon* v. *Southern Cal. Edison Co.* (1997) 53

---

[2]The court did not specify why it concluded the claims fell outside the coverage. However, the only ground on which State Farm argued that the underlying action fell outside the coverage was that the injuries did not arise from the ownership, maintenance, or use of the premises. Presumably, the court adopted that argument. In any event, as explained *post*, we may affirm on any correct ground whether or not the court relied on it.

Cal.App.4th 854, 860 [62 Cal.Rptr.2d 16]; *Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, 71 [15 Cal.Rptr.2d 598].)[3]

### B. *Ownership, Maintenance, or Use of Premises*

■ State Farm's principal argument is that the underlying action was not covered by the rental dwelling policies because the claims asserted in the action did not arise out of the ownership, maintenance, or use of the Grand Terrace or Chino properties.[4] We are unaware of any authority addressing whether sexual molestation which occurs in a dwelling owned by the molester arises from the "ownership, maintenance, or use" of the premises for purposes of insurance coverage. The "ownership, maintenance, or use" language, however, has been construed extensively in the context of auto-mobile liability policies, which typically cover claims arising from the "ownership, maintenance, or use" of the insured's vehicle. Those decisions find coverage only where the injury is in some way causally connected to the vehicle.

### 1. *The causal connection requirement—automobile policies*

In *State Farm Mut. Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123] (*Partridge*), the insured was driving his vehicle while holding a firearm which he had modified to lighten the trigger pull. The vehicle hit a bump and the gun discharged, wounding a passenger. The Supreme Court stated the accident was "clearly covered" by the driver's policy for injuries arising out of the "use" of the vehicle. (*Id.*, at pp. 100-101, fn. 7.) The court construed the "use" language to require "[s]ome minimal causal connection" between the vehicle and the accident, though not a showing of proximate causation. That requirement was satisfied by the role of the vehicle in causing the gun to discharge, notwithstanding the fact the

---

[3]The Kramers argue the court erred in granting judgment against Mrs. Kramer because State Farm did not specifically address her claims in its summary judgment motion. However, State Farm's notice of motion requested summary judgment against both Kramers, and State Farm in its supporting papers argued there was no coverage based on the "ownership, maintenance, or use" limitation. That argument, if correct, obviously negated Mrs. Kramer's, as well as Mr. Kramer's, claims. Mrs. Kramer therefore had adequate notice and opportunity to rebut the argument.

[4]State Farm also argues the Kramers' conduct was not covered because it was intentional and not accidental. We express no opinion as to the validity of that argument.

insured's negligence in modifying the firearm also contributed to the accident. (*Id.,* at pp. 100-101, and 100, fn. 7.)[5]

The discussion of the "use" requirement in *Partridge* was technically dictum, since neither party in *Partridge* disputed that the injury was covered by the automobile policy. (*Partridge, supra,* 10 Cal.3d at p. 101.) However, subsequent decisions make clear that the causal connection test articulated in *Partridge* is the governing standard in determining whether an injury arises from the ownership, maintenance, or use of a vehicle. Applying that standard, courts have held that shooting or throwing an object from a moving vehicle arises from the "use" of the vehicle if the vehicle is employed to position the attacker or to escape after the attack or the injury is made worse by the speed of the vehicle. (See *State Farm Mut. Auto. Ins.. Co.* v. *Davis, supra,* 937 F.2d 1415, 1420 [shooting]; *National American Ins. Co.* v. *Insurance Co. of North America* (1977) 74 Cal.App.3d 565, 571-572 [140 Cal.Rptr. 828] [throwing object].) Similarly, it has been held that, where an owner's modification of a vehicle causes it to overturn on steep terrain, the resulting injury necessarily arises from the ownership, maintenance, or use of the vehicle. (*State Farm Fire & Cas. Co.* v. *Camara* (1976) 63 Cal.App.3d 48, 53-55 [133 Cal.Rptr. 600].) And in a case predating *Partridge*, the court held that a pedestrian hit by a passing vehicle while standing at the door of a parked car suffered injury arising from the "use" of the parked car, where the car was "the essential factor that placed the parties in their respective positions at the time of the accident . . . ." (*Utah Home Fire Ins. Co.* v. *Fireman's Fund Ins. Co.* (1970) 14 Cal.App.3d 50, 54 [91 Cal.Rptr. 781].)

On the other hand, ". . . 'the mere transportation of a tortfeasor to a site where he commits a tort after departing from the . . . vehicle' does not establish the requisite causal relationship." (*Rowe* v. *Farmers Ins. Exchange, supra,* 7 Cal.App.4th 964, 972, quoting *Interinsurance Exchange* v. *Macias* (1981) 116 Cal.App.3d 935, 938 [172 Cal.Rptr. 385].) Coverage also is not established "where the vehicle merely provides a situs for the tort." (*State Farm Mut. Auto. Ins. Co.* v. *Davis, supra,* 937 F.2d 1415, 1422.) Thus, injury to a passenger from the accidental discharge of a firearm in a stopped car

---

[5]Subsequent Court of Appeal decisions have questioned whether *Partridge* truly stands for the proposition that only a minimal causal connection is required. (See *Rowe* v. *Farmers Ins. Exchange* (1992) 7 Cal.App.4th 964, 971, fn. 1 [9 Cal.Rptr.2d 314].) Some courts have taken the position that ". . . the use of the automobile must be a *substantial* factor or *predominating* cause of the injury." (*Id.,* at p. 972, italics added; accord, *Farmers Ins. Exchange* v. *Reed* (1988) 200 Cal.App.3d 1230, 1233 [248 Cal.Rptr. 11]; but see *State Farm Mut. Auto. Ins. Co.* v. *Davis* (9th Cir. 1991) 937 F.2d 1415, 1419, fn. 3 [ "the causal nexus need not be substantial"].) Because we conclude that even a minimal causal connection is lacking in this case, we need not concern ourselves with this issue.

was not covered, because even though the injury occurred in the car, it was not caused by the use of the car. (*Aetna Casualty & Surety Co.* v. *Safeco Ins. Co.* (1980) 103 Cal.App.3d 694, 698 [163 Cal.Rptr. 219].)

## 2. *Application to sexual conduct*

The causal connection requirement has been applied in at least two cases involving tortious sexual conduct in a motor vehicle or vessel. In *Erie Ins. Exch.* v. *Claypoole* (1996) 449 Pa. Super. 142 [673 A.2d 348 ], the court held a school bus driver's molestation of children while driving them to and from school was not an injury "arising out of the ownership, maintenance, or use" of the buses. The court explained that ". . . no causal connection exists between the operation of a school bus and the injuries suffered by its minor passengers who have been sexually molested by its driver." (*Id.,* at p. 158 [673 A.2d at p. 356].)

In a recent California decision, the court held an insured's transmission of herpes to his girlfriend during oral sex on a voyage on his yacht was not covered by a policy against liability incurred "through the ownership, maintenance or use" of the yacht. Citing *Partridge,* the court stated: "Neither the movement of appellant's yacht nor the manner of its operation had anything to do with the transmission of the herpes virus from appellant to Susan L. . . . Rather, the yacht merely provided a situs—along with appellant's house and Susan L.'s house—wherein appellant executed his plan to engage in a variety of 'very free sexual activities' with Susan L." (*Peters* v. *Firemen's Ins. Co.* (1998) 67 Cal.App.4th 808, 813 [79 Cal.Rptr.2d 326], fns. omitted.)[6]

## 3. *Application to real property*

We derive from these cases a general principle that injury, including injury from sexual conduct, does not arise from the "ownership, maintenance, or use" of a vehicle absent a showing that the use of the vehicle contributed in some way to the injury, beyond merely serving as the situs for the activity. Either the vehicle must have played a role in the physical mechanism which caused the injury (as in *Partridge*), or the use of the

---

[6]The Kramers assert *Peters* is distinguishable on the basis that the complaint in that case did not mention the yacht, while in this case the B.'s complaint did refer to the Grand Terrace and Chino properties. But the court in *Peters* considered extrinsic evidence which showed that the sexual activity leading to the transmission of herpes had occurred on the yacht. (67 Cal.App.4th at p. 812.)

vehicle must have been instrumental in placing the parties in a position for the injury to occur (see, e.g., *Utah Home Fire Ins. Co.* v. *Fireman's Fund Ins. Co.*, *supra*, 14 Cal.App.3d 50).

The Kramers, however, point out that a dwelling, unlike a car or a boat, is a situs by definition. Thus, they argue that, even though a vehicle policy may not apply where the vehicle is merely the situs of the tortious conduct, coverage should be broader where a dwelling is involved. In particular, the Kramers assert, there should be no requirement that the structure interact with the injured party to cause the injury, as would be the case with respect to a rocking boat or a moving vehicle.

We question whether the distinction between vehicles and real property is as significant as the Kramers contend. Even though it is not mobile, real property can still directly cause physical injury, as in the case of a structural defect or other dangerous condition. Indeed, this is probably the type of injury most property owners have in mind when they purchase liability coverage.

But even if we concede the Kramers' point that physical causation is not required, we are not persuaded it is enough merely to show that the injury occurred on the premises. To the contrary, although there are fewer decisions construing the "ownership, maintenance, or use" requirement in the context of real property than in the automobile context, at least two decisions have applied the same causal connection requirement to policies covering real property.

In *Feurzeig* v. *Insurance Co. of the West* (1997) 59 Cal.App.4th 1276 [69 Cal.Rptr.2d 629] (*Feurzeig*), the court held a policy covering injury arising out of the "ownership, maintenance, or use" of a real estate company's offices covered a slander claim based on statements of one of its officers during business dealings at the offices. Citing *Partridge*, the court found the requisite "causal relation" between the slander claims and the company's use of the premises: "The claims here were connected with PVCC's 'use of' or 'operations . . . incidental to' the described premises because PVCC used a portion of the described premises to conduct its general business operations, and some of the alleged slanders occurred in connection with Feurzeig's 'use of' those premises to conduct PVCC's business." (*Id.*, at p. 1285.)

On the other hand, the court in *Reznichek* v. *Grall* (1989) 150 Wis.2d 752 [442 N.W.2d 545] (*Reznichek*) concluded that transmission of herpes by the

owner of a tavern, restaurant, and bowling alley to his girlfriend during after-hours sexual activity on the premises did not arise out of the "ownership, maintenance, or use" of the premises. The court noted that the phrase "arising out of" is ordinarily understood to connote "some causal relationship." It found no such relationship between the injury and the ownership, maintenance, or use of the premises. (*Id..,* at p. 758.)

*Feurzeig* and *Reznichek,* of course, involved business premises rather than residential property. Arguably, the typical "use" of residential property may encompass a greater range of activity than the use of business premises, which are dedicated to a particular commercial purpose. But construing residential coverage to apply to any tortious conduct occurring on the premises would in effect render nugatory the language specifically limiting coverage to injury arising out of the "ownership, maintenance, or use" of the property. Conduct having no causal connection to the premises, such as the insured's preparation of a libelous letter, would be covered merely because it occurred onsite. Such expansive coverage would not, in our view, comport with an insured's " 'objectively reasonable expectations.' " (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].) We therefore conclude the causal connection requirement, as applied in *Feurzeig* and *Reznichek,* should be applied to the present case notwithstanding the fact it involves residential rather than commercial premises.

### 4. *Application to dwellings*

The remaining question is how to distinguish between an injury which is sufficiently causally related to the "use" of residential property to warrant coverage, and a noncovered injury in which the premises merely serve as a situs. Although we do not purport to fashion a rule that will correctly resolve every case, we are satisfied that the required relationship is lacking in this case.

The Kramers assert that, because the B.'s complaint alleged the molestations occurred while the children were in the "care, custody, and control" of the Kramers, it is evident that the molestations arose from the Kramers' "use" of the premises as a residence to care for the children. But there is no indication that the B.'s children were exposed to any peculiar risk of molestation due to the use of the Grand Terrace and Chino properties. To the contrary, the B.'s complaint alleged the molestations also occurred at the Mira Loma property and at an unspecified location in Hawaii. The molestations thus could, and in fact would, have occurred even if the Kramers had

not owned, maintained, or used the Grand Terrace and Chino premises. The circumstances from which the injuries arose were Mr. Kramer's propensity toward child molestation and his and Mrs. Kramer's suppression of the molestations, not the use of any particular location for the care of the children.

The Kramers similarly argue it would have been impossible for the alleged acts to have occurred without the use of a dwelling. They assert (though the B.'s complaint does not allege) that the focus of the B.'s allegations was that Mr. Kramer used the "seclusion and privacy" of the insured premises to commit the molestations. Again, however, there is no indication that the seclusion and privacy necessary for the molestations could only be obtained at the covered premises. Obviously, that could not be the case, since the molestations did occur at other locations as well. Indeed, child molestation commonly occurs in locations other than residential dwellings, such as public parks or restrooms, vacant land, or motor vehicles.

One can imagine circumstances in which there might be enough of a causal relationship that molestation reasonably could be said to arise from the ownership, maintenance, or use of a particular dwelling. Use of premises as a daycare facility, for example, might afford the owner or operator opportunities for surreptitious contact with children which he or she otherwise would not have. But the covered residences in this case were merely two of several locations at which the Kramers had custody and control of the children. The required causal connection between the use of those particular premises and the tortious activity causing the injury therefore was lacking.

5. *Remaining contentions**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

C. *Conclusion*

Because the claims asserted in the underlying action bore no causal connection to the Kramers' ownership, maintenance, or use of the covered premises, they were not covered by the rental dwelling policies. For the same reason, the underlying action created no potential for coverage, and thus State Farm had no duty to defend the Kramers in that action. (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d

---

*See footnote, *ante*, page 332.

467, 861 P.2d 1153].) Accordingly, the lower court properly granted summary judgment.

## III

### DISPOSITION

The judgment is affirmed. Costs to respondent.

Ward, J., and Gaut, J., concurred.

A petition for a rehearing was denied December 8, 1999, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied March 1, 2000.